

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE ___OCT 0 3 2019___

~~Fairhurst, CJ~~

CHIEF JUSTICE

This opinion was
filed for record
at 8am on Oct. 3, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| JOHN STRAUSS and MICHELLE STRAUSS, husband and wife, and their marital community, | NO. 95449-6 |
| Petitioners, |  |
| v. | EN BANC |
| PREMERA BLUE CROSS, | Filed ___OCT 0 3 2019___ |
| Respondent. |  |

STEPHENS, J.—John and Michelle Strauss challenge the Court of Appeals decision affirming summary dismissal of their action against Premera Blue Cross, which arises out of the denial of coverage for proton beam therapy (PBT) to treat John Strauss's prostate cancer. At issue is whether the Strausses have established the existence of a genuine issue of material fact regarding PBT's superiority to intensity-modulated radiation therapy (IMRT), thereby demonstrating that proton beam therapy is "medically necessary" within the meaning of their insurance

contract. We hold that they have, and we therefore reverse the Court of Appeals' decision and remand for a jury trial on the disputed facts.

## FACTS

John Strauss was diagnosed with prostate cancer in September 2008. He is insured under a Premera health insurance policy that covers "medically necessary" treatment, defined as treatment conducted "[i]n accordance with generally accepted standards of medical practice . . . and not more costly than an alternative [treatment] . . . at least as likely to produce equivalent therapeutic or diagnostic results." Clerk's Papers (CP) at 212. After consulting with Dr. David Bush, Strauss elected to pursue PBT. Dr. Bush recommended PBT over IMRT because, although no clinical trials directly compared the two forms of treatment, he believed that PBT resulted in fewer adverse side effects for the majority of patients.

On November 12, 2009, Strauss sought preauthorization from Premera to undergo PBT rather than IMRT, but Premera denied the request on the ground PBT was not "medically necessary" within the meaning of the policy. CP at 243. Strauss twice unsuccessfully pursued internal appeals of this decision with Premera. At Strauss's request, Premera sought an external review in July 2010, which upheld the denial of coverage. Meanwhile, Strauss completed PBT in April 2010.

The Strausses subsequently filed this action in superior court, seeking recovery for the cost of PBT, as well as insurance bad faith damages and treble damages for violation of the Consumer Protection Act, chapter 19.86 RCW. The parties stipulated that PBT is costlier than IMRT and is at least as effective in treating prostate cancer. But Premera moved for summary judgment on the ground that the Strausses could not meet their burden to show PBT was "medically necessary" under the insurance plan. CP at 37-38. The parties agreed that PBT would qualify as "medically necessary" if it resulted in fewer adverse side effects compared to IMRT; Premera argued that the Strausses had failed to raise a genuine issue as to that fact. CP at 40.

Acknowledging the absence of clinical studies directly comparing the two therapies, the Strausses relied on declarations from two board-certified radiation oncologists who opined that PBT would likely lead to fewer side effects because it irradiates a smaller amount of healthy tissue. Premera responded that these expert opinions did not constitute "credible science" and that, in the absence of "randomized controlled trials," the Strausses' arguments about side effects "rely entirely on conjecture, theory, and inadmissible cross-study comparisons." CP at 19. Premera did not move to exclude any of the Strausses' expert declarations, however. Instead, it discounted those declarations on their merits, arguing that, even

if one were to credit nonrandomized studies, some of those studies show that PBT may be equivalent to or worse than IMRT in terms of side effects. Premera admitted that developments in radiation therapy, generally, have been aimed primarily at reducing incidental radiation to healthy tissue. But it cited publications, by the National Comprehensive Cancer Network and two other professional organizations, stating that there is currently no clear evidence that PBT has any advantages over IMRT. When it moved for summary judgment dismissal, Premera relied solely on these publications and the federal district court's decision in *Baxter v. MBA Group Insurance Trust Health & Welfare Plan*, 958 F. Supp. 2d 1223 (W.D. Wash. 2013), which it characterized as involving facts "almost identical" to this case. CP at 37. The superior court granted Premera's motion.

The Court of Appeals affirmed, even though it acknowledged that the record contained conflicting evidence on the question of side effects, the sole issue before the superior court on Premera's motion for summary judgment. Specifically, the court stated, "[T]he record establishes there are peer-reviewed medical studies that show the side effects of PBT may be superior to IMRT and other peer-reviewed medical studies that show the side effects of IMRT may be superior to PBT." *Strauss v. Premera Blue Cross*, 1 Wn. App. 2d 661, 683, 408 P.3d 699 (2017). It then concluded that, because the record contained conflicting evidence on this issue, PBT

and IMRT were equivalent treatments as a matter of law, "absent clinical evidence directly comparing [them]." *Id.* at 683-84. We granted Strauss's petition for review. *Strauss v. Premera Blue Cross*, 190 Wn.2d 1025 (2018).

## ANALYSIS

We review summary judgments de novo. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (citing *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006)). "'Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."'" *Id.* (alteration in original) (quoting *Locke v. City of Seattle*, 162 Wn.2d 474, 483, 172 P.3d 705 (2007) (quoting CR 56(c))). "When determining whether an issue of material fact exists, the court must construe all facts and inferences in favor of the nonmoving party." *Id.* (citing *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998)).

As noted, there is no dispute that PBT costs more than IMRT and is equally effective in curing prostate cancer. Nor is there any dispute over the meaning of the insurance contract provision at issue here: for purposes of this appeal, the parties agree that PBT is "medically necessary" if it results in fewer side effects than IMRT. Thus, the sole question presented in this case is whether the Strausses raised a

genuine issue of material fact as to PBT's relative superiority, in terms of side effects, to IMRT.

Generally speaking, expert opinion on an ultimate question of fact is sufficient to establish a triable issue and defeat summary judgment. *Eriks v. Denver*, 118 Wn.2d 451, 457, 824 P.2d 1207 (1992) (citing *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346 (1979)). However, "speculation and conclusory statements will not preclude summary judgment." *Volk v. DeMeerleer*, 187 Wn.2d 241, 277, 386 P.3d 254 (2016) (citing *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012)). "The expert's opinion must be based on fact and cannot simply be a conclusion or based on an assumption if it is to survive summary judgment." *Id.* (citing *Melville v. State*, 115 Wn.2d 34, 41, 793 P.2d 952 (1990)).

Evaluating the declarations on summary judgment, the Court of Appeals concluded that the record contained conflicting evidence on the issue of side effects: "the record establishes there are peer-reviewed medical studies that show the side effects of PBT may be superior to IMRT and other peer-reviewed medical studies that show the side effects of IMRT may be superior to PBT." *Strauss*, 1 Wn. App. 2d at 683. Yet, it concluded that PBT and IMRT were therefore equivalent treatments as a matter of law, "absent clinical evidence directly comparing [them]."

*Id.* at 683-84. In other words, the Court of Appeals held that the Strausses were required to provide evidence in the form of randomized clinical trials in order to defeat summary judgment. *Id.*

This holding was error. Requiring expert medical opinion testimony to be based on a specific type of research goes beyond the court's limited role at the summary judgment stage, which is simply to decide whether a trial is unnecessary. *See Reese v. Stroh*, 128 Wn.2d 300, 307, 907 P.2d 282 (1995) (trial court erred by excluding medical expert testimony solely because it was not based on "statistically significant studies" directly supporting expert's opinion). Indeed, Premera seems to concede this point in some of its briefing. *See* Premera Blue Cross's Resp. to Amicus Br. of Wash. State Ass'n for Justice Found. at 4 ("[i]t is correct . . . that head-to-head clinical trials are not *required* as a basis for medical opinion testimony [and that a] doctor . . . could opine based on his own observation"). There is no dispute that the Strausses' experts were qualified to testify, only a dispute as to the weight or credibility of their opinion testimony. The credit to be given to any witness's testimony, including expert opinion testimony, is quintessentially a matter for the trier of fact to determine. *Grove v. PeaceHealth St. Joseph Hosp.*, 182 Wn.2d 136, 146, 341 P.3d 261 (2014); *see also Anderson v. Akzo Nobel Coatings, Inc.*, 172

Wn.2d 593, 606, 260 P.3d 857 (2011) ("Evidentiary rules provide significant protection against unreliable, untested, or junk science.").

Premera urges this court to embrace the United States District Court's decision in *Baxter* and uphold summary dismissal. The insurance contract at issue in *Baxter* had a "medical necessity" definition identical to the provision at issue in this case. *Baxter*, 958 F. Supp. 2d at 1228-29. Like the Strausses, the plaintiff in *Baxter* argued that the plan covered PBT "despite the lack of randomized clinical trials comparing [PBT] to other forms of radiation therapy for treatment of prostate cancer," because observational studies and theoretical models supported PBT's superiority. *Id.* at 1232. The defendant-insurer countered that PBT was definitely costlier than IMRT and had not been proved more effective. *Id.* at 1230. The court ultimately agreed with the insurer, finding that, where "[n]o study cited by either party provides statistically significant evidence that one therapy is superior to the other," the plaintiff had not met his burden to prove PBT was "medically necessary." *Id.* at 1238.

While the Court of Appeals found *Baxter* persuasive,[1] we do not. The *Baxter* court, considering cross motions for summary judgment on very similar facts,

---

[1] *See Strauss*, 1 Wn. App. at 683-84 (citing *Baxter* as the sole source of authority for the conclusion that "reasonable minds could only conclude that absent clinical evidence directly comparing PBT and IMRT, the treatments are equivalent").

acknowledged that the evidence before it, in the form of observational studies, theoretical models, and expert opinion, supported both parties' arguments. 958 F. Supp. 2d at 1236-38. From this conflicted record, it erroneously concluded that PBT and IMRT are therefore *equivalent* treatments as a matter of law, neither superior to the other in terms of side effects or secondary malignancy. *Id.* at 1237 ("the Court concludes that the record demonstrates that IMRT and [PBT] provide equivalent cancer treatment with comparable side-effects"). In reaching that conclusion, the court weighed the credibility of conflicting medical studies and essentially rejected all of them:

> While Plaintiff points to observational studies demonstrating that proton therapy may slightly reduce certain side-effects in some situations, it appears that it is just as likely to increase other side effects. . . . Plaintiff focuses on studies involving mathematical modeling that show that the long-term risk of developing a secondary malignancy may be higher with [PBT]. . . . Defendants focus on comparative studies that show that other side-effects, including gastrointestinal side-effects may be slightly more severe with [PBT]. . . . No study cited by either party provides statistically significant evidence that one therapy is superior to the other.

*Id.* at 1237-38. This analysis reflects a weighing of conflicting evidence and is exactly what the Court of Appeals did in this case.[2] This is inappropriate at the

---

[2] *See id.* at 683 (holding Dr. Laramore's expert opinion is insufficient to create a genuine issue of material fact because "Dr. Laramore admits his opinion that PBT is superior for the risk of contracting secondary cancers is 'theoretical' . . . [and he] based his opinion on the side effects from radiation to the rectal wall on one medical study"). It is not clear why the court believed that an expert's inferences are insufficient if drawn from a single study, but the questions begged by that conclusion—e.g., how many studies are

summary judgment stage. *Grove*, 182 Wn.2d at 146. We decline to follow *Baxter* and instead adhere to settled summary judgment principles under Washington law. The trier of fact, not the court, must determine whether PBT has a superior side effect profile, making it "medically necessary" within the meaning of the insurance policy.

## CONCLUSION

Because there is conflicting evidence in the record regarding the "medical necessity" element of the Strausses' coverage claim, the trial court erred by granting Premera's motion for summary judgment dismissal. We reverse the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.[3]

---

required to make an inference credible?—illustrate the manner in which the court assumed the fact finder's role.

[3] The Strausses have also requested attorney fees on appeal, but until coverage is determined, this request is premature.

_Stephens, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_González, J._

_Gordon McCloud, J._

No. 95449-6

MADSEN, J. (dissenting)—The majority holds that the trial court erred in granting insurer Premera Blue Cross summary judgment dismissal of John and Michelle Strauss's insurance bad faith claim. I disagree. The summary judgment mechanism was designed to address needless and costly trials where, after viewing the plaintiff's assertions most favorably, reasonable minds could not differ as to the existence of debatable facts. I agree with the Fifth Circuit Court of Appeals that "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)). "If the nonmoving party fails to meet [his] burden, the motion for summary judgment must be granted." *Id.* at 1076. Fairness and judicial economy require as much because "every hour of litigation is costly both to the parties and the taxpayers, and the expense should not be incurred needlessly." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). As the Fifth Circuit court explained, noting the backlog of cases and the high cost of litigation,

A plaintiff should not be required to wait indefinitely for a trial when the defendant has a meritless defense that can be resolved on motion for summary judgment. Nor should a defendant be required to bear the unnecessary costs of delay and trial to defend against a claim that has no merit. Neither party should be required to bear the costs of trying all of the issues in a case when some can and should be resolved on summary judgment. Nor is it fair to require other cases to languish on the district courts' trial dockets because of cases that present no genuine questions of material fact. . . .

Notwithstanding the long history of summary judgment procedure, some parties will always complain that summary judgment unfairly deprives a party of the right to have the case heard by the trier of fact. No one, however, should be heard to question the fairness of requiring a party to meet basic evidentiary and procedural burdens in the trial of a case. Summary judgment requires no more. If, after adequate time for discovery, a party cannot produce proof that it has facts to support its case, then the case should be resolved at that point, and this is true irrespective of the type of case.

*Little*, 37 F.3d at 1076. Moreover, the Supreme Court has explained that when the summary judgment movant has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "[T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)).[1] "[The] purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Id.* (quoting FED. R. CIV. P. 56(e) advisory committee's note to 1963 amendment). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

---

[1] Our equivalent state rule contains the same requirement. *See* CR 56(e).

2

'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968)); *cf. Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 209 (2d Cir. 2015) (the summary judgment phase is particularly important in antitrust matters because of the high cost of antitrust litigation and its potential chilling effect on the market as a whole).

This court has made clear that while "a court must deny summary judgment when a party raises a material factual dispute[, t]he legal inquiry shapes what is a material fact." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485-86, 78 P.3d 1274 (2003) (citation omitted). Here, the majority reverses because it says that "the Court of Appeals held that the Strausses were required to provide evidence in the form of randomized clinical trials in order to defeat summary judgment." Majority at 7. That is not a fair characterization of the Court of Appeals' decision. Fairly read, the Court of Appeals held that under the record before the trial court, the Strausses did not (and could not) meet their burden. I agree with that conclusion.

The Strausses (hereafter Strauss) sued Premera Blue Cross for breach of contract, bad faith, and violation of the Consumer Protection Act, chapter 19.86 RCW, contending that Premera's "denial [of insurance coverage] was without reasonable justification and therefore in bad faith."[2] Clerk's Papers (CP) at 8. "If the insured claims that the insurer denied coverage unreasonably in bad faith, then the insured must come forward with

---

[2] John Strauss chose to pursue, and sought coverage for, a radiation treatment called proton beam therapy (PBT), rather than pursuing intensity modulated radiation therapy (IMRT), for his prostate cancer. The parties agree that either therapy is effective for treating prostate cancer, but PBT is more costly.

3

evidence that the insurer acted unreasonably." *Smith*, 150 Wn.2d at 486. "The policyholder has the burden of proof[, and t]he insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds." *Id.*

Here, Premera's denial-of-coverage decision was reviewed, scrutinized, and upheld on three separate requests for appeal by Strauss. Those reviews were performed by two different independent radiation oncologists and an independent review organization selected by the Washington State Office of the Insurance Commissioner. In light of such extensive review and consistent result, in my view, reasonable minds could not differ regarding the reasonableness of Premera's denial-of-coverage decision.

Further, the majority, noting the trial court's "limited role at the summary judgment stage," *see* majority at 7, relies on the general rule that an expert opinion is sufficient to raise a material fact question adequate to defeat summary judgment. *See id.* at 6 (citing *Eriks v. Denver*, 118 Wn.2d 451, 457, 824 P.2d 1207 (1992)). While in many cases this may be true, speculation and conclusory statements do not raise a question of material fact and will not preclude summary judgment. *Volk v. DeMeerleer*, 187 Wn.2d 241, 277, 386 P.3d 254 (2016). "The expert's opinion must be based on fact and cannot simply be a conclusion or based on an assumption if it is to survive summary judgment." *Id.*; *see also Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (the nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain). In *Volk*, this court also "reject[ed] the view that there

are *differing standards of speculation* permitted at the summary judgment and evidentiary

phases." 187 Wn.2d at 276 (emphasis added). Speculation is always speculation.

Here, as discussed below, Strauss's experts acknowledge that their opinions on the

superiority of proton beam therapy (PBT) as to side effects are no more than

assumptions, theories, and speculations. Under these circumstances, I disagree that a

material fact question is present in this case.

This court construes insurance policies as contracts. *Quadrant Corp. v. Am. States

Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). "[I]f the policy language is clear and

unambiguous, we must enforce it as written." *Id.* Here, the insurance policy in question

covers radiation therapy services, but only if the services provided are, in "our

[(Premera's)] judgment," "medically necessary." CP at 177, 186. The policy defines

"medically necessary" as those "covered services . . . that a physician, exercising prudent

clinical judgment, would provide to a patient" for the treatment of a disease, and that are

> •In accordance with generally accepted standards of medical
> practice;
> •Clinically appropriate, in terms of type, frequency, extent, site and
> duration, and considered effective for the patient's illness, injury or
> disease; and
> •Not primarily for the convenience of the patient, physician, or other
> health care provider, and *not more costly than an alternative service
> . . . at least as likely to produce equivalent therapeutic or diagnostic
> results* as to the diagnosis or treatment of that patient's illness,
> injury or disease.
>
> For these purposes, "generally accepted standards of medical practice"
> means standards that are based on credible scientific evidence published in
> peer reviewed medical literature generally recognized by the relevant
> medical community, physician specialty society recommendations and the
> views of physicians practicing in relevant clinical areas and any other
> relevant factors.

*Id.* at 212 (emphasis added). There is no dispute that both PBT and intensity modulated radiation treatment (IMRT) provide effectual treatment to arrest Strauss's prostate cancer. There is also no dispute that PBT is more expensive than IMRT. Accordingly, if Strauss cannot show that PBT is otherwise superior to IMRT, i.e., that PBT has a superior side effects profile, he has failed to show that PBT is medically necessary for coverage purposes. *See Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 431-32, 38 P.3d 322 (2002) ("The burden first falls on the insured to show its loss is within the scope of the policy's insured losses."). Accordingly, Strauss bears the burden to show that his PBT treatment was medically necessary.

At this summary judgment stage, Strauss must meet his burden to create a genuine issue of material fact regarding the medical necessity of PBT treatment to forestall summary judgment. He has not done so. "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). In other words, there is a genuine factual dispute "where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger*, 164 Wn.2d at 552. In my view, as noted, reasonable minds could not differ here. This is not the typical battle-of-the-experts case where opposing views can claim legitimate support in the relevant scientific, medical, or expert communities. Here, there is no dispute in the radiation oncology community that PBT is not a medically necessary treatment for prostate cancer. Nor is PBT a new technology. It

6

was first used in the 1950s. CP at 421. It is, however, a more expensive form of radiation therapy.

The National Comprehensive Cancer Network (NCCN), an alliance of leading cancer centers across the country, drafts guidelines for the treatment of cancer. *Id.* at 416-18, 420. These "guidelines are developed based on testing, and evidence through panels of expert physicians in the field of cancer treatments and reflect a consensus reached by these physicians on current approaches and standards for the treatment of cancer." *Lucas v. Texas Int'l Life Ins. Co.*, No. CIV-11-163-FHS, 2012 WL 6000306, at *2 (E.D. Okla. Nov. 30, 2012) (court order). NCCN guidelines are "the standard of care for the treatment of cancer." *Id.* NCCN's *Clinical Practice Guidelines in Oncology for Prostate Cancer* conclude that "there is no clear evidence supporting a benefit or decrement to [PBT] over IMRT for either treatment efficacy or long-term toxicity." CP at 368 (NCCN Guidelines 2015). NCCN's patient guidelines similarly note that "[t]o date, research hasn't shown that [PBT] is any better or worse for treating cancer or causing side effects." *Id.* at 482.

Similarly, the American Society for Radiation Oncology (ASTRO) publishes a model policy on PBT. Concerning the treatment for prostate cancer, ASTRO concludes, "There is no clear evidence that [PBT] for prostate cancer offers any clinical advantage over other forms of definitive radiation therapy." *Id.* at 642. ASTRO recommends PBT serve as a primary treatment for prostate cancer "only . . . within the context of a prospective clinical trial or registry." *Id.* at 368, 642.

Likewise, the Agency for Healthcare Research and Quality (AHRQ), part of the United States Department of Health and Human Services, also publishes guidelines on PBT for cancer treatment. *Id.* at 646-50. These guidelines are a "synthesis of currently accepted approaches to management, derived from a review of relevant scientific literature." *Id.* at 648. The AHRQ guidelines state, "Members of the working group do not currently recommend that patients with prostate cancer . . . be referred for [PBT], due to an insufficient evidence base." *Id.* at 648. Accordingly, the record before the trial court can be construed only to reflect a clear consensus within the oncological community that PBT is not a medically necessary treatment for Strauss's prostate cancer.

Further, as noted, the equivocal opinions offered by Strauss from the physician providing Strauss the PBT treatments at Loma Linda (Dr. David Bush) and Strauss's expert (Dr. George Laramore), in my view, do not create a fact question in light of the strong consensus in the radiation oncology community as discussed above. The record shows that at deposition when Dr. Bush was asked, "As between IMRT and [PBT], is it your opinion that there is a difference in these side effects?" *id.* at 905, he responded, "[T]hat's a hard question to answer. There's data to support, I think, both sides." *Id.* Dr. Bush further opined, regarding the state of evidence suggesting that side effects are substantially less with PBT, "I would say the evidence as of today is not as strong as we would like to see." *Id.* In light of such ambivalence, I agree with Premera that the provision of such an equivocal opinion is insufficient to forestall summary judgment. *See* Premera Blue Cross's Suppl. Br. at 16 (citing *Bickoff v. Wells Fargo Bank, NA*, 705 F.

8

App'x 616, 618 (9th Cir. 2017), for the proposition that "equivocal and speculative statements" are insufficient to defeat a summary judgment motion).

Similarly, Dr. Laramore conceded that his conclusion that PBT has fewer side effects is "theoretical," based on "assumptions" and "infer[ences]" drawn from the literature. CP at 657; *see also id.* at 1342 (Laramore report acknowledging "there have not been direct randomized trials . . . but rather one must review the literature to *infer* the advantages and disadvantages" (emphasis added)). Further, Laramore's report, submitted in response to Premera's summary judgment motion, acknowledges that PBT treatments for prostate cancer results in *higher* radiation doses to hip joints than IMRT treatments. *Id.* at 1348. In my view, on this record, the equivocal opinions offered by Strauss do not overcome the clear consensus among the radiation oncological community that PBT is not medically necessary for the treatment of prostate cancer like Strauss's. Accordingly, on this record, the trial court did not err in granting Premera summary judgment. *See Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986) ("nonmoving party in a summary judgment may not rely on speculation [or] argumentative assertions that unresolved factual issues remain"); *Kyreacos v. Smith*, 89 Wn.2d 425, 429, 572 P.2d 723 (1977) ("Facing a motion for summary judgment, a party cannot rely upon speculation and allegations to meet contrary facts.").

Finally, the majority dismisses *Baxter v. MBA Group Insurance Trust Health & Welfare Plan*, 958 F. Supp. 2d 1223 (W.D. Wash. 2013), but I agree with the federal district court's opinion. In *Baxter*, the United States District Court for the Western

District of Washington addressed the same PBT coverage issue presented here, which turned on the same policy language defining "medically necessary." *See id.* at 1228-29. Like Strauss, the plaintiff in *Baxter* chose PBT treatment at Loma Linda, and like Strauss's case here, his claim and appeals were denied on the basis of his policy's "medically necessary" requirement because the "'clinical outcomes with this treatment [(PBT)] have not been shown to be superior to other approaches including intensity modulated radiation therapy (IMRT).'" *Id.* at 1225. The plaintiff in *Baxter* submitted letters from his treating physician at Loma Linda and Dr. Laramore, the same expert that Strauss relies on here. *Id.* at 1226.

The federal district court granted summary judgment to the insurer, concluding as a matter of law that PBT was not "medically necessary" under the policy. The district court held, "Plaintiff has not met his burden to show that there is a genuine issue of material fact whether proton therapy is superior to IMRT. The current non-randomized observational studies demonstrate that proton therapy provides equivalent treatment to IMRT in terms of cancer control and side-effects." *Id.* at 1237. In reaching its conclusion, the federal district court held that

> inconsistencies in the current observational studies comparing [PBT] with other modalities of treatment for prostate cancer are consistent with the NCCN's conclusion that the use of [PBT] is not recommend[ed] for routine use in the treatment of early stage prostate cancer at this time "since clinical trials have not yet yielded data that demonstrates superiority to, or equivalence of, [PBT] and conventional external beam for treatment of prostate cancer."

10

*Id.* The district court found that "[n]o study cited by either party provides statistically significant evidence that one therapy is superior to the other." *Id.* at 1238.

As Premera correctly points out, *Baxter* is based on equivalent medical evidence presented in this case, from "the same clinic that treated Strauss and from the same expert that Strauss presents, and applied the same [policy] definition of 'medically necessary' at issue here." Premera Blue Cross's Suppl. Br. at 19. I agree that *Baxter* is properly decided and persuasive in this case. Like the insured in *Baxter*, Strauss "has not met his burden to prove that [PBT] was covered under the relevant policy language." *Baxter*, 958 F. Supp. 2d at 1238.

In sum, based on this record and for the reasons discussed above, in my view, the trial court did not err in granting summary judgment to Premera. Accordingly, I dissent.

Madsen, J.