# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| VINCENT ROBERSON, | No. 56768-7-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| CHI, FRANCISCAN; REGIONAL HOSPITAL; DR. EMBRA ARTHUR ROPER, MD; CORIANDER HERIDIA, ARNP; P. GARRETT, ARNP, | |
| Defendants, | |
| SOUND INPATIENT PHYSICIANS, INC.; DR. WILLIAM GRABOWSKI, MD; DR. CLARENCE MICHAEL KRAMER, MD, | |
| Respondents. | |

MAXA, J. – Vincent Roberson appeals the trial court's grant of summary judgment in favor of Dr. William Grabowski, Dr. Clarence Michael Kramer, and Sound Inpatient Physicians Inc. (SIP) in his medical negligence lawsuit.

Roberson was admitted to the hospital with a percutaneous endoscopic gastrostomy (PEG) feeding tube in place in his stomach. Roberson pulled out the PEG tube, and an advanced registered nurse practitioner (ARNP) – an SIP employee – performed a nonsurgical reinsertion of the tube. Roberson developed a distended abdomen and sepsis, and later it was determined that

the PEG tube had migrated and no longer was connected to Roberson's stomach. Dr. Grabowski was a radiologist who interpreted several x-rays of Roberson's abdomen after the PEG tube was reinserted, and Dr. Kramer was a gastroenterologist who performed a gastroenterology consultation after the PEG tube was reinserted.

Roberson's medical negligence lawsuit alleged that the ARNP was negligent in reinserting the PEG tube and failing to recognize that the PEG had migrated and that Dr. Grabowski and Dr. Kramer were negligent in failing to diagnose the PEG migration. However, Roberson's only expert was ARNP Cheryl Hahn, who was not a medical doctor and had no experience with PEG tubes. The trial court granted summary judgment in favor of Dr. Grabowski, Dr. Kramer and SIP, ruling that Hahn was not qualified to provide expert testimony on standard of care for those doctors or for the ARNP who reinserted the PEG tube.

We hold that (1) Roberson cannot establish that Dr. Grabowski and Dr. Kramer were negligent because Hahn as a nonphysician was not qualified to provide expert testimony on a radiologist's and a gastroenterologist's standard of care, and (2) Roberson cannot establish that SIP's employee was negligent because Hahn was not qualified by training or experience to provide expert testimony about the standard of care relating to PEG tubes. Accordingly, we affirm the trial court's grant of summary judgment in favor of Dr. Grabowski and Dr. Kramer and in favor of SIP.

FACTS

*Background*

Roberson was taken to Regional Hospital in April 2014 after being treated for pneumonia at another hospital. He arrived with a PEG tube, which is a feeding tube that is inserted through

2

the abdomen and into the stomach. ARNP Coriander Heridia, an SIP employee, was one of Roberson's primary care providers.

On April 4, Roberson pulled out his PEG tube. Heridia or another ARNP performed a nonsurgical reinsertion of the tube.[1] Dr. Grabowski reviewed x-rays of Roberson's kidneys, ureters, and bladder (KUB) and determined that the PEG tube was in place.

The next morning, Roberson began to receive liquid nutrients through the PEG tube. His abdomen became distended, and his providers ordered another KUB x-ray and a chest x-ray. Dr. Grabowski reviewed both x-rays. His impression was that Roberson had a moderate colonic ileus, which is when the muscles in the digestive tract stop the natural movement of the bowels. This was the last involvement Dr. Grabowski had with Roberson's case.

Roberson's symptoms became worse over the next two days. His abdomen was round and firm and his total daily intake of fluids exceeded the total daily output of fluids. He developed sepsis symptoms. On April 7, Roberson was sent to Dr. Kramer for a GI consultation for his distended abdomen. Dr. Kramer diagnosed Roberson with acute hepatic serology, which is when there is an elevated liver function. He noted that this was a result of a liver injury caused by insufficient blood flow, which typically resolves within a few days.

---

[1] The record is unclear whether Heridia or another ARNP reinserted the PEG tube. SIP states that Heridia performed the reinsertion. Roberson alleges that another ARNP performed the reinsertion. Because the record shows that Heridia was an SIP employee and we can infer that the other ARNP who could have reinserted the PEG was an SIP employee, who performed the reinsertion is immaterial to SIP's liability. Therefore, we will assume that Heridia reinserted the PEG tube.

On April 9, an abdominal CT (computed tomography) scan showed that the PEG tube was not connected to Roberson's stomach. Roberson was transferred to another hospital and immediately underwent surgery for sepsis.

*Trial Court Proceedings*

Roberson filed suit against various defendants, including Dr. Grabowski, Dr. Kramer, and SIP. Roberson alleged that each defendant owed him a duty of care and that each defendant failed to exercise reasonable care in their treatment of him, causing severe injury.

Roberson retained Hahn, an ARNP, as an expert witness. An ARNP is a registered nurse who completed a graduate-level educational program and can have primary responsibility when treating a patient. In her declaration, Hahn stated,

> *While I may not be competent to give testimony on the standard of care within a particular doctor's specialty*, that does not affect my opinions and conclusions regarding the standard of care and negligence of the nursing staff and any doctor who assumed the responsibility for care of Mr. Roberson.

Clerk's Papers (CP) at 164 (emphasis added).

Hahn also stated the following opinion:

> [A]ny medical provider who was responsible for Mr. Roberson . . . ignored very obvious signs of sepsis (infection), which began within hours of the time that tube feeding was resumed after it was forcibly removed and improperly reinserted. They each and all ignored very obvious signs, such as the hardening and distension of the abdomen, and an increasing fluid input level with a decreasing output level, which would have led anyone with any medical training to at least test for PEG tube displacement, especially in light of the record showing that it had been displaced and re-inserted within two days of its original placement. The tests which would have confirmed improper placement of the PEG tube were exceedingly simple.

CP at 164. Hahn further stated that there were two separate acts of negligence: improper reinsertion of the PEG tube and continuing negligence in failing to detect the PEG migration and to refer Roberson to emergency services.

Finally, Hahn provided specific opinions regarding the negligence of Heridia, another ARNP who Roberson believed reinserted the PEG tube, Dr. Grabowski, and Dr. Kramer.

Dr. Grabowski and Dr. Kramer both moved for summary judgment based on Roberson's failure to provide competent expert testimony to support his medical negligence claims. They argued that because Hahn was an ARNP and not a medical doctor, she could not establish the standard of care of a radiologist or a gastroenterologist nor the proximate cause between the alleged breach and damages. In response, Roberson only offered expert testimony from Hahn. The trial court granted Dr. Grabowski's and Dr. Kramer's summary judgment motions. The court ruled that the evidence required to establish the standard of care must come from a medical doctor within the same specialty.

SIP subsequently moved for summary judgment based on Roberson's failure to provide competent expert testimony regarding the ARNP's reinsertion of the PEG tube. SIP argued that Hahn lacked the necessary expertise to testify about the standard of care relating to PEG tubes and that her claim that the PEG tube was misplaced had no factual basis. SIP also argued that Hahn's causation testimony was based on speculation rather than facts.

Roberson opposed SIP's summary judgment motion on the merits, but also argued that SIP challenged only one of his negligence allegations, regarding reinsertion of the PEG tube. He asserted that SIP did not address his allegations that Heredia was negligent for failing to identify the migration of the PEG tube and failing to refer him for emergency services when he developed sepsis. SIP responded that its motion did address all of Roberson's claims because those claims all were predicated on the central issue of PEG tube reinsertion and migration.

The trial court granted SIP's summary judgment motion and dismissed all of Roberson's claims against SIP. The court ruled that Hahn was not qualified to provide expert testimony regarding standard of care and causation, and those were the central issues on summary judgment.

Roberson appeals the trial court's grant of summary judgment in favor of Dr. Grabowski, Dr. Kramer, and SIP.

ANALYSIS

A.    SUMMARY JUDGMENT STANDARD

We review summary judgment orders de novo. *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022). We view all evidence in the light most favorable to the nonmoving party, including reasonable inferences. *Id.* Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* A genuine issue of material fact exists if reasonable minds can come to different conclusions on a factual issue. *Id.*

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Sartin v. Est. of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021). A moving defendant can meet this burden by demonstrating that the plaintiff cannot support their claim with any competent evidence. *Id.* If the defendant makes such a showing, the burden shifts to the plaintiff to present evidence that creates a genuine issue of material fact. *Id.* "Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial." *Id.*

A material opinion from an expert generally is sufficient to create a question of fact and defeat summary judgment. *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 301, 449 P.3d 640 (2019). But to avoid summary judgment, an expert providing an opinion for the nonmoving party must have sufficient qualifications and expertise. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 228-29, 770 P.2d 182 (1989). And an expert's opinion must be based on facts, and opinions based solely on speculation or assumptions will not preclude summary judgment. *Strauss*, 194 Wn.2d at 301.

B.     LEGAL PRINCIPLES – MEDICAL NEGLIGENCE EXPERT TESTIMONY

One way of proving medical negligence is to establish that the health care provider failed to follow the accepted standard of care. RCW 7.70.030(1). With regard to the standard of care, a plaintiff must show that "[t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1)(a).[2] A plaintiff also must show that such a failure was the proximate cause of the injury at issue. RCW 7.70.040(1)(b).

In a medical negligence action, expert testimony generally is necessary to establish both the standard of care and causation.[3] *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 231-32, 393 P.3d 776 (2017). The expert may not merely opine that the medical provider was negligent, but

---

[2] RCW 7.70.040 was amended in 2021, after the events at issue in this case. Because the amendments to the sections cited involved only changes to numbering and lettering, we cite to the current version of the statute.

[3] Expert testimony is not required to establish causation where technical medical expertise is not needed to understand causation, such as a wrong limb being amputated or a patient's eye being poked while stitching a facial wound. *Frausto*, 188 Wn.2d at 232.

must establish the applicable standard of care and explain how the provider acted negligently by breaching that standard. *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86-87, 419 P.3d 819 (2018). In other words, the expert must state what a reasonable medical provider would or would not have done under the circumstances, that the defendant medical provider acted or failed to act in that manner, and that this conduct caused the plaintiff's injuries. *Collins v. Juergens Chiropractic, PLLC*, 13 Wn. App. 2d 782, 793, 467 P.3d 126, *review denied,* 196 Wn.2d 1027 (2020). If the plaintiff fails to produce expert testimony regarding one of these required elements, the medical provider is entitled to summary judgment on liability. *Id.*

In addition, a medical negligence plaintiff must produce "*competent* expert testimony" to create a genuine issue of fact and thereby avoid summary judgment. *Reyes*, 191 Wn.2d at 86 (emphasis added). An expert's testimony will be admissible only if the expert is qualified. *Volk v. DeMeerleer*, 187 Wn.2d 241, 277, 386 P.3d 254 (2016). Under ER 702, a witness may qualify as an expert "by knowledge, skill, experience, training, or education." This rule requires courts to consider whether a medical expert has " 'sufficient expertise in the relevant specialty' such that the expert is familiar with the procedure or medical problem at issue." *Frausto*, 188 Wn.2d at 232 (quoting *Young*, 112 Wn.2d at 229).

Even a qualified expert's opinion "must be based on fact and cannot simply be a conclusion or based on an assumption if it is to survive summary judgment." *Volk*, 187 Wn.2d at 277. "[S]peculation and conclusory statements will not preclude summary judgment." *Id.* In addition, expert medical testimony must meet the reasonable medical certainty or reasonable medical probability standard. *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 606-07, 260 P.3d 857 (2011).

Ordinarily, a trial court's determination on an expert witness's qualifications is reviewed for an abuse of discretion. *Frausto*, 188 Wn.2d at 231. But we use the de novo standard of review for evidentiary rulings regarding a summary judgment motion. *Id.*

C.    DR. GRABOWSKI/DR. KRAMER SUMMARY JUDGMENT MOTIONS

Roberson argues that the trial court erred in ruling that Hahn was not qualified to testify regarding the standard of care for Dr. Grabowski and Dr. Kramer. Dr. Grabowski and Dr. Kramer argue that Hahn was not qualified to testify regarding their standard of care because she is an ARNP and not a medical doctor. We agree with Dr. Grabowski and Dr. Kramer.

The fact that Hahn is an ARNP and not a physician does not automatically disqualify her from testifying in this case. *See Young*, 112 Wn.2d at 227. "[D]epending on the circumstance, a nonphysician might be qualified to testify in a medical malpractice action." *L.M. v. Hamilton*, 193 Wn.2d 113, 135, 436 P.3d 803 (2019). In fact, the Supreme Court in *Frausto* held that an ARNP may be qualified to testify regarding causation in a medical negligence case. 188 Wn.2d at 234-42.

However, the Supreme Court in *Young* expressly held that a nonphysician is not qualified to testify regarding the standard of care of a physician. 112 Wn.2d at 227-31. The court stated,

> *This court has never accepted . . . a rule that would allow a nonphysician to testify as an expert regarding the proper standard of care for a physician practicing a medical specialty.* Such a rule would severely degrade administration of justice in medical malpractice actions.
> . . .
> [W]e have found no cases in which a nonphysician is found competent to testify on a physician's technical medical standard of care in a medical malpractice case. Rather, the cases uniformly hold that a physician's testimony is necessary in such cases to defeat a defendant's motion for summary judgment.

*Id.* at 227-28 (emphasis added).

The court reaffirmed this holding eight months later in *McKee v. American Home Products Corp.*: "We recently reiterated the rule that to establish the standard of care required of professional practitioners, that standard must be established by the testimony of experts who practice in the same field. *The duty of physicians must be set forth by a physician.*" 113 Wn.2d 701, 706, 782 P.2d 1045 (1989) (emphasis added).

Here, Roberson's expert witness, Ms. Hahn, is an ARNP. Because she was testifying that two doctors breached their standards of care, under *Young* and *McKee* she was not qualified as an expert witness in this case.

Roberson relies on *Frausto* in arguing that Hahn was qualified to testify to Grabowski and Kramer's basic standard of care in generally assessing Roberson because as an ARNP, she is a health care provider that can independently diagnose and treat to a certain degree. However, *Frausto* addressed only allowing an ARNP to testify regarding medical causation, not the standard of care for doctors. Medical causation is only one element of RCW 7.70.040(1). The standard of care is the first element, RCW 7.70.040(1)(a), and the law is settled that standard of care be proven by a physician in the same specialty as the defendant physician. *McKee*, 113 Wn.2d at 706; *Young*, 112 Wn.2d at 227-28.

In addition, Roberson argues that Hahn was testifying only to the standard of care required by primary medical care providers and not to the standards required by Dr. Grabowski's and Dr. Kramer's specialties. But Dr. Grabowski and Dr. Kramer were not Roberson's primary medical care providers nor were they acting in that capacity when assessing him. Their involvement was as medical specialists. Dr. Grabowski read Roberson's KUB x-rays as a radiologist. And Kramer was consulted as a gastroenterologist on Roberson's distended

abdomen. And Hahn even admitted in her declaration that she was not "competent to give testimony on the standard of care within a particular doctor's specialty." CP at 164.

Hahn, as an ARNP, was not qualified to testify regarding the standard of care for Dr. Grabowski and Dr. Kramer. And Roberson had no other expert medical testimony to support his claims against them. Therefore, we hold that the trial court did not err in granting summary judgment in favor of Dr. Grabowski and Dr. Kramer.

D.      SIP SUMMARY JUDGMENT MOTION

Roberson argues that the trial court erred in granting summary judgment in favor of SIP because Hahn's expert testimony was sufficient to create a genuine issue of material fact regarding the negligence of SIP employees. SIP argues that Hahn was not qualified to testify about negligence relating to PEG tubes because she had no experience with PEG tubes. We agree with SIP.[4]

1.      Claims Not Addressed in Summary Judgment Motion

Initially, Roberson argues that the trial court erred in ruling on his claims that SIP did not address in its summary judgment motion. We disagree.

Roberson emphasizes that SIP's summary judgment motion addressed only his claim that Heridia negligently reinserted the PEG tube and causation. The motion did not specifically address two additional allegations: that Heridia was negligent in failing to properly observe, evaluate or detect the PEG tube migration and in failing to refer Roberson to emergency services once sepsis symptoms occurred.

---

[4] SIP also argues that Hahn's testimony regarding causation was based only on speculation. Because we conclude that Hahn was not qualified to testify regarding the standard of care, we do not address this argument.

However, SIP argued in its summary judgment motion that Hahn was not qualified to testify regarding PEG tubes and that her testimony regarding causation was speculative. These arguments would apply to all of Roberson's claims. We reject this argument.

### 2. Hahn's Testimony Regarding Standard of Care

RCW 7.70.030(1) requires proof that the defendant failed to follow the accepted standard of care. As noted above, a medical expert must have " 'sufficient expertise in the relevant specialty' such that the expert is familiar with the procedure or medical problem at issue." *Frausto*, 188 Wn.2d at 232 (quoting *Young*, 112 Wn.2d at 229).

Roberson claims that Hahn was an "expert[] in PEG tube placement and migration." Br. of Appellant at 26. But her deposition demonstrated that she had no training or experience regarding these topics. Hahn's previous work as an ARNP regarding PEG tubes only involved determining whether a patient had a PEG tube: "Basically, I knew whether they had them or not." CP at 678. She admitted that she had never placed a PEG tube. And her professional role never involved determining whether a PEG was appropriately placed. In fact, Hahn even was unable to answer what "PEG" meant.

Hahn was not qualified to testify about negligence relating to PEG tubes, neither reinserting them nor diagnosing a migration. And Hahn was Roberson's only expert to support his claim against SIP. Therefore, we hold that the trial court did not err in granting summary judgment in favor of SIP.

## CONCLUSION

We affirm the trial court's grant of summary judgment in favor of Dr. Grabowski and Dr. Kramer and in favor of SIP.

No. 56768-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, A.C.J.

VELJACIC, J.