[No. 18620-9-II. Division Two. September 6, 1996.]

MATTHEW J. DOHERTY, *Individually and as Personal Representative and Guardian, Appellant,* v. THE MUNICIPALITY OF METROPOLITAN SEATTLE, *Respondent.*

*Todd W. Gardner* and *Arthur D. Swanson, P.S.*, for appellant.

*David F. Hiscock, James E. Horne*, and *Peery, Hiscock, Pierson, Kingman & Peabody*, for respondent.

TURNER, J. — Matthew J. Doherty's wife was killed and

his daughter was seriously injured in a series of collisions ending when their car struck a bus. He now appeals the summary dismissal of his wrongful death and personal injury action against the bus owner Municipality of Metropolitan Seattle (Metro). He argues that the trial court erred in striking an expert's affidavit and that the evidence raises sufficient factual issues upon which to proceed to trial. We reverse and remand.

On December 21, 1989, Reiko Doherty, then five months pregnant and traveling with her 23-month-old daughter, was driving a rented, 1989 Ford Escort on Southcenter Parkway near the Southcenter shopping mall in Tukwila. While traveling northbound at 35 to 40 mph, Mrs. Doherty lost control of her car – apparently as a result of hypoglycemic shock.[1] According to eyewitnesses, she was still sitting upright in the driver's seat as the car swerved back and forth for over 500 feet. It struck the rear of two cars at a stoplight, careened into the median, and ran through a red light. It veered back into the northbound lanes, swerved to the left, sideswiped a southbound car, swung back across both northbound lanes and ricocheted off the curb. It veered to the left again and, traveling diagonally across the northbound lanes, crashed head-on into an articulated Seattle Municipal Transit bus.[2]

The bus driver had begun a left turn into the mall parking lot, and then paused, partially blocking the northbound lanes, while waiting for traffic to clear. When he saw Mrs. Doherty heading straight toward him, he set the parking brake, jumped out of his seat, and ran backward through the bus warning passengers of the impending collision. The car slid under the bumper of the bus, compressing the car onto the road surface and leaving gouge marks on the pavement. These marks established the relative location

[1]Mrs. Doherty was diabetic. The autopsy report pointed toward her being incapacitated by hypoglycemic shock shortly before her death.

[2]An articulated bus is a bus with two passenger coaches joined together by an accordion-like flexible midsection.

of each vehicle at the point of impact. Mrs. Doherty and her unborn child were killed and her daughter was seriously injured.

Matthew Doherty sued Metro, alleging that its driver negligently operated the bus by failing to yield the right-of-way to avoid a head-on collision with Mrs. Doherty's vehicle.[3] Metro moved for summary judgment on the theory that proximate cause could not be established. It argued that the accident and resulting injuries would have occurred even if the bus had fully stayed within its left turn pocket. Metro further contended that any connection between the placement of the bus and the ultimate tragic result of the accident was too remote to impose legal liability.

In opposing Metro's summary judgment motion, Doherty introduced, without objection, an affidavit, diagrams, and detailed calculations from accident reconstructionist Paul H. Olson. According to Olson, Mrs. Doherty's car would not have hit the bus head-on if the bus had remained in its left turn lane. At most, it likely would have struck the bus at a 15 to 20 degree angle. Assuming that her car continued at the same speed and direction, the severity of this glancing blow to the bus's side would have been substantially less than the head-on collision that actually occurred.

Doherty also sought to introduce an affidavit from Dr. Carley C. Ward, a biomechanical engineer specializing in injury and cause of death assessments. Dr. Ward's affidavit set forth in great detail her qualifications and credentials, including: (1) 10 years as Deputy Coroner for the Los Angeles County Medical Examiners Office; (2) nine years as a Research Engineer at the University of California, San Diego Medical School; (3) experience teaching a course on "The Biomechanics of Injury in Motor Vehicle

---

[3]He also sued Ford Motor Company (alleging the vehicle was not crashworthy; failure to instruct or warn on use of restraint system) and Mini-Rate-Rent-A-Car (alleging failure to provide a child's car seat; failure to instruct on proper use of restraint system). Claims against these other defendants have been resolved.

Accidents"; and (4) service as an Assistant Chairman of the U.S. Department of Transportation Committee on Head & Neck Injury. According to Dr. Ward, Reiko Doherty would likely not have suffered fatal or seriously disabling injuries had the bus remained within the left turn lane.

Metro challenged Dr. Ward's qualification to render medical opinions about the amount of force necessary to cause death or disabling injuries, and moved to strike her affidavit. The trial court granted this motion without comment. It also granted Metro's motion for summary judgment. Doherty's motion for reconsideration of these orders was denied.

On appeal, Doherty contends that the trial court committed error by striking the affidavit of Dr. Ward and granting summary judgment.

We review de novo. *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). Making the same inquiry as the trial court, we view the facts and their inferences in the light most favorable to the nonmoving party. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). We may affirm the summary judgment only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue concerning any material fact, and the moving party is entitled to judgment as a matter of law. The initial burden under CR 56(c) is on the moving party to prove that no issue is genuinely in dispute. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Thereafter, the burden shifts to the nonmoving party to establish that a triable issue exists. *Schaaf*, 127 Wn.2d at 21. Summary judgment is appropriate if reasonable persons could reach only one conclusion from all of the evidence. *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992); CR 56(c).

Metro contends that Dr. Carley Ward's affidavit was properly stricken because Doherty failed to qualify Dr. Ward to render expert medical opinions about the amount of force necessary to cause death or disabling injuries. We

observe that the affidavit does not explain how her background in engineering qualified her to give an opinion in the anatomical, physiological, or medical sciences. A trial court's determination of an expert's qualifications will be upheld absent an abuse of discretion. *See Bernal v. American Honda Motor Co.*, 87 Wn.2d 406, 413, 553 P.2d 107 (1976). We therefore uphold the order striking Dr. Ward's affidavit.[4]

■ Even without Ward's affidavit, however, Doherty set forth sufficient evidence to overcome Metro's motion for summary judgment. To prove actionable negligence, a plaintiff must establish: (1) the existence of a duty owed to the complaining party; (2) a breach of that duty; (3) injury; and (4) that the claimed breach was a proximate cause of the resulting injury. *Hansen*, 118 Wn.2d at 479. Metro contends it was entitled to summary judgment because Doherty failed to present sufficient evidence of proximate cause. Doherty argues that proximate cause is a question for the jury.

■ "Proximate cause" includes both cause-in-fact and legal cause. Cause-in-fact is a cause but for which the accident would not have happened. *Channel v. Mills*, 77 Wn. App. 268, 272, 890 P.2d 535 (1995) (citations omitted). Cause-in-fact may be determined as a matter of law if the causal connection is so speculative and indirect that reasonable minds could not differ. *See Walters v. Hampton*, 14 Wn. App. 548, 555-56, 543 P.2d 648 (1975). But generally, cause in fact is a question for the jury. *Johnson v. State*, 77 Wn. App. 934, 942, 894 P.2d 1366, *review denied*, 127 Wn.2d 1020 (1995). Legal cause depends upon whether a defendant's conduct should warrant legal liability as a matter of social policy and common sense. *See Taggart v. State*, 118 Wn. 2d 195, 225-26, 822 P.2d 243 (1992). "The question of legal causation is so intertwined with the question of duty that the former can be answered by address-

---

[4]Metro concedes, and we tend to agree, that if Doherty had supplied a "revised or supplemental affidavit," setting forth in greater detail the nature of Ward's training, the affidavit likely would have been admissible.

ing the latter." *Taggart*, 118 Wn.2d at 226 (citations omitted).

Metro asserts that the sole proximate cause of the collision was Reiko Doherty's driving, and that Doherty failed to offer sufficient evidence to rebut that assertion. Doherty, on the other hand, contends that Metro's driver owed a duty of care to all oncoming traffic, and breached this duty by failing to yield the right of way. He argues that a reasonable person would conclude from the evidence that, but for the bus driver's failure to yield, Doherty's wife's and daughter's injuries would have been less severe. We conclude that these are genuine issues of material fact and should be determined by a jury.

 Basic traffic rules on right of way provide that "[t]he driver of a vehicle intending to turn left within an intersection . . . shall yield the right of way to any vehicle approaching from the opposite direction which is . . . so close . . . as to constitute an immediate hazard." RCW 46.61.185. The oncoming driver — here, Mrs. Doherty — is the favored driver, and the primary duty to avoid collision is on the disfavored driver. *Mendelsohn v. Anderson*, 26 Wn. App. 933, 937, 614 P.2d 693 (1980) (citations omitted) (excessive speed on the part of oncoming favored driver will not excuse disfavored driver's duty to yield.) A driver must yield to an oncoming vehicle even if it can be shown that the oncoming vehicle was proceeding unlawfully. *State v. Carty*, 27 Wn. App. 715, 620 P.2d 137 (1980) (defendant who turned left into path of oncoming car was guilty of failure to yield, even though oncoming car was speeding).

██ Photographs and affidavits describing gouge marks on the pavement show that, at the point of its collision with Mrs. Doherty's car, the Metro bus was violating the right of way by blocking a lane of oncoming traffic. The car was within its rightful lanes of travel and was close enough to constitute an immediate hazard. The bus driver's duty to follow the rules of the road was not suspended simply because Mrs. Doherty had lost, to an unknown degree, the ability to control her vehicle.

Metro did not establish that the same accident and same consequences would have occurred even if Metro's driver were not blocking part of the northbound roadway. On the other hand, even without the affidavit of Dr. Ward, Doherty has produced sufficient evidence to raise a genuine issue of material fact as to the nature and severity of the collision had the bus remained within its left turn lane. Doherty's unchallenged expert accident reconstructionist, Paul Olson, said in his affidavit that had the bus been in its own lane of travel, it may not have collided with the car at all. Even if the collision occurred, he said, the car would have hit the bus at a 15 to 20 degree angle and slid along the side of the bus. He said that the impact and severity of this glancing collision would not approach that experienced by the occupants in the actual head-on collision. Inferences from this evidence, when viewed in the light most favorable to the nonmoving party, raise sufficient factual issues to proceed to trial.

We reverse and remand.

MORGAN and BRIDGEWATER, JJ., concur.