229 P.3d 812 (2009)
154 Wash.App. 735
Woodrow C. MOSSMAN and Alycia M. Mossman, husband and wife, Appellants,
v.
Joseph E. ROWLEY and Jane Doe Rowley, husband and wife, Respondents.
No. 27560-4-III.
Court of Appeals of Washington, Division 3.
December 10, 2009.
Publication Ordered March 11, 2010.
*814 John A. Bardelli, Attorney at Law, Spokane, WA, for Appellants.
Michael Louis Wolfe, Randall & Danskin PS, Spokane, WA, for Respondents.
KULIK, A.C.J.
¶ 1 Alicia Mossman[1] drove south on Monroe Street in Spokane, Washington, and attempted to turn left onto Columbia Street. Joseph Rowley was driving in excess of the speed limit, north on Monroe. Mr. Rowley collided with Ms. Mossman's vehicle as she turned left. The trial court granted Mr. Rowley's motion for summary judgment. Ms. Mossman appeals. Because Mr. Rowley was the favored driver and the disfavored driver  Ms. Mossman  must yield to him, we affirm the trial court.

FACTS
¶ 2 On November 13, 2004, two vehicles driven by Alicia Mossman and Joseph Rowley collided at the intersection of Monroe Street and Columbia Street in Spokane, Washington.
¶ 3 At this intersection, Monroe is a four-lane street. On the night of the collision, Ms. Mossman arrived at the intersection of Monroe and Columbia around 7:10 p.m. in her Toyota sport utility vehicle (SUV). She was driving south on Monroe intending to turn left (east) onto Columbia. Ms. Mossman stated in her deposition that she saw a truck driving toward her (north) on Monroe. The truck was about one block away, so she turned. The truck hit Ms. Mossman's vehicle on the back portion of the passenger side.
¶ 4 Prior to the collision, Mr. Rowley picked up William Geiger and Ben Fazio from Rick's Ringside tavern. Mr. Rowley stated in his deposition that he had not been drinking. The police report states that Mr. Rowley reported drinking two beers at home and that he was driving because he was the most sober of the drivers.
¶ 5 Mr. Rowley was driving north on Monroe toward Columbia in the lane closest to the center of the road. The speed limit at the point of collision was 30 m.p.h. It is undisputed that Mr. Rowley was speeding. Mr. Rowley stated that he was going 45 m.p.h. The police report states that Mr. Rowley reported going 60 m.p.h. Crystal Rice, a witness, stated he was going 60 to 70 m.p.h. F. Denman Lee, a collision reconstruction expert, estimated Mr. Rowley's speed to be about 60 m.p.h.
¶ 6 Mr. Rowley stated that he saw Ms. Mossman's vehicle approaching him from north on Monroe. He saw that the vehicle's turn signal was on. Mr. Rowley stated that Ms. Mossman started to make the left turn, then hesitated halfway and, at the last second, darted out onto the road. The front of Mr. Rowley's truck hit the back passenger side of Ms. Mossman's SUV while both vehicles *815 were in the left lane of the northbound lanes of Monroe.
¶ 7 After the collision, Mr. Rowley and Mr. Geiger were unharmed and fled from the scene. Mr. Fazio did not flee. He received a leg injury as a result of the collision. Ms. Mossman experienced pain in her chest and ribs. She was treated at Holy Family Hospital and released. Mr. Geiger returned to the scene after fleeing, and Mr. Rowley turned himself in a few hours later.
¶ 8 Ms. Mossman filed suit on October 8, 2007. Mr. Rowley served his first set of discovery requests by mail on October 24, 2007. Ms. Mossman did not reply and Mr. Rowley filed a motion to compel on January 11, 2008.
¶ 9 The court issued a case scheduling order on January 11, 2008, including the following dates: April 7 deadline for plaintiffs to disclose lay and expert witnesses, August 29 deadline for discovery, and a trial date of November 3.
¶ 10 Mr. Rowley and Ms. Mossman were deposed on April 1. Mr. Rowley filed a motion for summary judgment on July 22, and a hearing date was scheduled for August 22. On August 11, Ms. Mossman filed an opposition memorandum to Mr. Rowley's motion for summary judgment, arguing that Mr. Rowley had caused the accident by speeding. On August 18, Ms. Mossman served her disclosure of lay and expert witnesses.
¶ 11 At the August 22 hearing, the court granted Ms. Mossman's motion to continue and the hearing was rescheduled for September 19. The court stated that any additional materials were due from Ms. Mossman by September 5 and from Mr. Rowley by September 12. The court reserved ruling on the motion to continue the trial.
¶ 12 Ms. Mossman filed the declaration of Mr. Lee, a collision reconstruction expert, on September 5. Mr. Lee stated that if Mr. Rowley had not been speeding, Ms. Mossman would have been able to make her turn in complete safety.
¶ 13 On September 17, Ms. Mossman filed a second motion to continue the summary judgment hearing as well as to shorten time, to enlarge time to respond, to reopen discovery, to allow Ms. Mossman to add to her witness list, and to continue the trial. In Ms. Mossman's supporting affidavit, she stated that she (through her attorney) contacted the Spokane City Attorney's Office and they informed her that Mr. Rowley had pleaded guilty to reckless driving. Ms. Mossman also learned that her copy of the Washington State Collision Report was incomplete and that the City of Spokane Police Department had completed a total reconstruction of the accident in the absent part of the report.[2] Ms. Mossman's affidavit referred to her attempts to locate Mr. Geiger and the importance of his statements to the case. The affidavit also mentioned Ms. Rice, who witnessed the accident. Ms. Mossman's counsel told the court that Ms. Rice was not known to exist as a witness by either party and was first discovered within the September 4 to September 8, 2008 time frame.
¶ 14 On September 18, the court continued the summary judgment hearing, but denied the motion to continue the trial. The court set the new summary judgment hearing date for October 2, and Ms. Mossman was instructed to file any additional affidavits by 1:30 p.m. on September 26. The court ruled that it would accept affidavits, but would not permit any further depositions.
¶ 15 On September 30, Ms. Mossman submitted Ms. Rice's declaration. On October 1, Mr. Rowley filed a motion to strike, arguing Ms. Rice's declaration was untimely.
¶ 16 On October 2, the court granted Mr. Rowley's motion to strike Ms. Rice's declaration as untimely, noting that Ms. Rice's identity and address had been a matter of public record for years. The court ran out of time to hear argument on the summary judgment, and the hearing was continued until October 10. On October 10, the court granted Mr. Rowley's motion for summary judgment. Costs were awarded to Mr. Rowley.
¶ 17 Ms. Mossman appeals arguing the trial court erred by: (1) granting Mr. Rowley's motion for summary judgment, (2) denying her a continuance of the summary *816 judgment hearing, (3) striking Ms. Rice's declaration, and (4) awarding costs to Mr. Rowley.

ANALYSIS
¶ 18 Summary judgment will be sustained upon review if there are no issues of material fact when viewing the evidence in the light most favorable to the nonmoving party. Summary judgment is reviewed de novo. Colwell v. Holy Family Hosp., 104 Wash. App. 606, 611, 15 P.3d 210 (2001).
¶ 19 A driver turning left, as a disfavored driver, must yield to an oncoming driver, who is the favored driver. RCW 46.61.185. The primary duty to avoid a collision is on the disfavored driver. Doherty v. Mun. of Metro. Seattle, 83 Wash.App. 464, 470, 921 P.2d 1098 (1996). "A driver must yield to an oncoming vehicle even if it can be shown that the oncoming vehicle was proceeding unlawfully." Id.
¶ 20 It is well established that excessive speed which merely places two vehicles at the same place at the same time is not enough to prove causation. Channel v. Mills, 77 Wash.App. 268, 277, 890 P.2d 535 (1995). Excessive speed is not causal because the argument can be made that if the disfavored driver had been going faster, the collision would have been avoided, in the same way that if the favored driver had been going slower, the collision would have been avoided. However, excessive speed can be causal if it prevents the favored driver, between the point of notice and the point of impact, from avoiding a collision. Id. at 278-79, 890 P.2d 535. The point of notice is the moment at which the favored driver realizes the disfavored driver is not going to yield. Id. at 280 n. 16, 890 P.2d 535.
¶ 21 Here, Mr. Rowley is the favored driver and Ms. Mossman is the disfavored driver. It does not matter what speed Mr. Rowley was traveling prior to the collision. The inquiry here is whether Mr. Rowley's speed prohibited him from avoiding the collision between the point he realized Ms. Mossman was not going to yield and the point of impact. Mr. Rowley stated in his deposition that Ms. Mossman "darted out into the road." Clerk's Papers (CP) at 49. Ms. Mossman stated that she slowed down to turn left and then turned quickly in front of Mr. Rowley. In Mr. Fazio's deposition, he stated that Ms. Mossman "turned right in front of us . . . without a chance for us to have a hope  a hope of any braking." CP at 344. Both drivers and Mr. Fazio state that Ms. Mossman's left turn was quick, which would not leave time for Mr. Rowley to react.
¶ 22 Mr. Lee gave his expert opinion that had Mr. Rowley been driving more slowly, the collision would not have happened. This is exactly the analysis that the courts have held to be incorrect because, had Mr. Rowley been driving faster, the collision would have been avoided as well.
¶ 23 Ms. Mossman failed to show that Mr. Rowley had enough time to avoid the collision. Both drivers and Mr. Fazio stated that Ms. Mossman made a quick turn. The trial court did not err by granting summary judgment in favor of Mr. Rowley.
¶ 24 Ms. Mossman next argues that the trial court erred by not continuing the summary judgment hearing. A trial court's decision on a CR 56(f) motion is reviewed for an abuse of discretion. Colwell, 104 Wash. App. at 615, 15 P.3d 210.
¶ 25 The court granted a continuance on the summary judgment hearing. Ms. Mossman was allowed to secure affidavits and declarations, but was not allowed to take additional depositions. Ms. Mossman contends that she should have been granted a continuance on the summary judgment hearing pursuant to CR 56(f) and allowed to take depositions.
¶ 26 CR 56(f), titled "When Affidavits Are Unavailable," provides:
Should it appear from the affidavits of a party opposing the [summary judgment] motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
*817 ¶ 27 In Turner v. Kohler, 54 Wash. App. 688, 693, 775 P.2d 474 (1989), the court stated that the trial court could deny a motion for continuance if:
(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.
Denial of a continuance can be based on any one of the above three prongs. Pelton v. Tri-State Mem'l Hosp., Inc., 66 Wash.App. 350, 356, 831 P.2d 1147 (1992).
¶ 28 Ms. Mossman argues that she did not receive the full motor vehicle collision report until early September 2008. She appears to argue that this report gave rise to new evidence and that she was denied the opportunity to gather depositions from Mr. Geiger, Ms. Rice, and a few police officers, as well as redepose Mr. Rowley. We address each person, and their CR 56(f) significance, in turn.
¶ 29 William Geiger. Ms. Mossman argues in the September 17 motion that it was important for her to locate and depose Mr. Geiger because his statements given to the police contradict Mr. Rowley's statements in the following ways: (1) Mr. Rowley said he was at home when he received a call to pick up Mr. Geiger and Mr. Fazio; however, Mr. Geiger stated that Mr. Rowley was drinking at Rick's Ringside tavern with Mr. Geiger and Mr. Fazio; and (2) Mr. Geiger stated that Mr. Rowley liked to power lock the brakes and drive the truck at high speed.
¶ 30 First, we note that no one had been able to locate Mr. Geiger throughout the proceedings in the trial court. Second, as discussed above, excessive speed does affect causation unless it prohibits the favored driver from avoiding a collision after the point of notice. And third, as noted above, Doherty concluded that a disfavored driver must yield to the favored driver even if the favored driver is proceeding unlawfully. Doherty, 83 Wash.App. at 470, 921 P.2d 1098. Ms. Mossman did not yield here. Mr. Geiger's statements, even if his whereabouts were known, would not give rise to a genuine issue of material fact.
¶ 31 Crystal Rice. Ms. Mossman argues that she did not know about Ms. Rice because she was not listed as a witness on Ms. Mossman's copy of the Washington State Motor Vehicle Collision Report. Ms. Mossman is correct in that Ms. Rice's name and contact information were not listed, but the report has a section that says "Witness Rice will testify that" and sets forth what she stated to the police at the time of the collision. CP at 386. Ms. Rice was a known witness and there is no reason that Ms. Mossman could not have attempted to ascertain her identity in the four years between the time of the accident and the summary judgment hearing. The trial court properly denied Ms. Mossman's motions seeking information from Ms. Rice because there was no reasonable explanation for the delay.
¶ 32 Officers Adams, Dashiell, and Lundgren. Ms. Mossman did not state that she wished to depose Officers Adams, Dashiell and Lundgren in her September 17 motion. She first stated that she wished to depose them in the facts section of her brief to this court. Appellate courts do not generally consider issues raised for the first time on appeal, unless they are of constitutional magnitude. State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995). Ms. Mossman's argument is not of constitutional magnitude and cannot be raised for the first time on appeal.
¶ 33 Mr. Rowley. Ms. Mossman argues that she should have been able to depose Mr. Rowley a second time because she recently learned that he was convicted of reckless driving. Mr. Rowley argues that charges brought against him were extensively covered in his first deposition and that Ms. Mossman fails to explain how a second deposition would give rise to genuine issues of material fact. Mr. Rowley is correct that Ms. Mossman's September 17 motion affidavit states only that there are "clearly a plethora of issues that need to be further addressed in this case"[3] but it does not state *818 how these issues would give rise to genuine issues of material fact.
¶ 34 The trial court did not abuse its discretion by denying the depositions of Mr. Geiger, Ms. Rice, the officers, and Mr. Rowley.
¶ 35 Ms. Mossman also asserts that the trial court erred by striking Ms. Rice's declaration and awarding costs to Mr. Rowley.
¶ 36 We will not review issues where inadequate argument has been briefed "or only passing treatment has been made." State v. Thomas, 150 Wash.2d 821, 868-69, 83 P.3d 970 (2004). Ms. Mossman failed to make any argument regarding these issues. Therefore, we do not review them on appeal.
¶ 37 The trial court awarded costs to Mr. Rowley under RCW 4.84.030. Ms. Mossman does not make any argument regarding costs under RCW 4.84.030. Her arguments regarding costs pertain only to CR 68.
¶ 38 We affirm the summary judgment favoring Mr. Rowley.
WE CONCUR: SWEENEY, and KORSMO, JJ.
NOTES
[1] We note different spellings in the record for Ms. Mossman's first name. We shall use the spelling Ms. Mossman provided in her April 1, 2008 deposition.
[2] Mr. Rowley did not have the complete report either, so there was no purposeful withholding.
[3] CP at 371.