IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MAXINE BLOOD, a married woman, | ) | No. 81848-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WILLOW-WIST FARM, INC., a | ) | |
| Washington corporation; VIKING | ) | |
| FEAST ICE CREAM, a Washington | ) | |
| business; and "JANE DOE," an | ) | |
| individual, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

HAZELRIGG, J. — Maxine Blood was seriously injured while visiting Willow-Wist Farm when an employee of a vendor at the farm turned quickly and collided with her, causing her to fall. She filed a lawsuit alleging negligence against Willow-Wist, the ice cream vendor and the employee who knocked her down. The trial court granted summary judgment for Willow-Wist, finding no genuine issue of material fact that any crowding in the farm store had a causal connection to the vendor's employee colliding with Blood, and dismissed Willow-Wist from the suit. Blood later obtained a judgment against the ice cream vendor. Blood now appeals, alleging that Willow-Wist's summary judgment dismissal and the subsequent denial of her motion for reconsideration of that ruling were improper. We disagree and affirm.

FACTS

Willow-Wist Farm, a dairy farm in Sequim, participated in the Clallam County Farm Tour on October 4, 2014. Viking Feast Ice Cream was a local vendor selling their ice cream products at Willow-Wist Farm that day. Viking Feast is a sole proprietorship owned and operated by Thormod Skald. Skald makes his ice cream with Willow-Wist milk, but is not a wholesale buyer; he orders milk on an as-needed basis. The day of the incident, Skald had employed a friend, Amber Golding, to help with ice cream sales at the Farm Tour event.

At some point on the afternoon in question, Viking Feast ran out of ice cream and arranged to purchase pints from the Willow-Wist farm store to sell at their stand. Skald sent Golding into the farm store, which was on site, to get more pints of ice cream. Blood arrived at Willow-Wist and went into the farm store to obtain a half-pint of milk for her grandson. According to Blood, Golding rushed into the farm store and "hurriedly" grabbed some pints of ice cream from the freezer. Golding then abruptly turned around and collided with Blood, knocking Blood to the ground. Another patron in the store provided testimony that Golding was "in a hurry" and "not really paying attention" when she knocked Blood over. No one testified that anyone else knocked into Golding or Blood to cause the accident.

Blood broke her right femur, which required surgery the next day, a two-month hospitalization in an in-patient rehabilitation center, and other follow up treatment. In March of 2016, Blood filed her complaint against Willow-Wist, Viking Feast, and Golding. Blood alleged that overcrowding in the farm store posed a foreseeable danger to its business invitees and that Willow-Wist failed to maintain

the premises in a safe condition and exercise reasonable case under the circumstances. On August 1, 2016, Willow-Wist filed a motion for summary judgment arguing various theories under which the trial court could dismiss them from the suit. Blood opposed the motion and provided the court with evidence that she argued created sufficient questions of material fact sufficient to overcome the motion for summary judgment. One exhibit was a declaration by Joellen Gill, a Human Factors expert qualified to testify regarding workplace safety standards.

The trial court granted Willow-Wist's motion for summary judgment and Blood filed a motion for reconsideration. The court requested a written response from Willow-Wist. The court eventually denied the motion and issued a memorandum opinion explaining the basis for the denial. After the claim against Willow-Wist was dismissed, Blood secured a judgment against Viking Feast for $628,523.64 in October 2019. Blood then filed this appeal.

## ANALYSIS

Blood first assigns error to the trial court's grant of Willow-Wist's motion for summary judgment. This court reviews a grant of summary judgment de novo. Mohandessi v. Urban Venture LLC, 13 Wn. App. 2d 681, 692, 468 P.3d 622 (2020). Summary judgment is properly granted when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR56(c). "A material fact is one that affects the outcome of the litigation." Owen v. Burlington Ne. and Santa Fe R.R. Co., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). "In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably for the

nonmoving party." Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). To establish negligence a plaintiff must prove, "'(1) the existence of a duty owed to the complaining party; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach was a proximate cause of the injury.'" Milson v. City of Lynden, 174 Wn. App. 303, 309, 298 P.3d 141 (2013) (quoting Hansen v. Friend, 118 Wn.2d 476, 479, 824 P.2d 483 (1992)). "The granting of summary judgment is proper if the non-moving party, after the motion is made, fails to establish any facts which would support an essential element of its claim." Weatherbee v. Gustafson, 64 Wn. App. 128, 131, 822 P.2d 1257 (1992). In our review, we place ourselves "in the position of the trial court and consider the facts in a light most favorable to the nonmoving party." Young v. Key Pharm., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

Blood contends that there was a dispute as to how crowded the farm store was at the time of her injury such that it created an issue of material fact. It is clear, however, that the court provided this inference in Blood's favor when it ruled "[u]nder this standard, the 'store' was crowded." But we agree with the trial court's determination that the proper focus for the inquiry is "the specific area in the store where the incident occurred." This fundamental question highlights Blood's inability to establish proximate cause for her negligence claim as it relates to Willow-Wist.

"Washington law recognizes two elements to proximate cause: Cause in fact and legal causation." Hartley v. State, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Cause in fact is the "but for" consequences of an act—the physical

relationship between an act and an injury. Id. at 778. Normally, cause in fact is a question for the finder of fact. Moore v. Hagge, 158 Wn. App. 137, 148, 241 P.3d 787 (2010). "But the court may decide this question as a matter of law if 'the causal connection is so speculative and indirect that reasonable minds could not differ.'" Id. (quoting Doherty v. Mun. of Metro. Seattle, 83 Wn. App. 464, 469, 921 P.2d 1098 (1996)). "Legal cause depends upon whether a defendant's conduct should warrant legal liability as a matter of social policy and common sense." Doherty, 83 Wn. App. at 469. "The question of legal causation is so intertwined with the question of duty that the former can be answered by addressing the latter." Taggart v. State, 118 Wn.2d 195, 226, 822 P.2d 243 (1992).

The evidence presented demonstrates that crowding of the farm store as a whole was not a cause of Blood's injury. Blood herself provided deposition testimony that indicated crowding was not an issue in front of the milk case where her injury occurred and that there was sufficient space for Golding to avoid contact with her. Though there was evidence that the store was generally crowded, the evidence as to the specific area where the accident occurred provided that Golding had sufficient space to walk to the freezer as well as open and close the freezer door. Blood argues to this court that the trial court improperly placed great weight on Golding's testimony that she was able to walk to the freezer. This argument fails to recognize the need for Blood to establish that if overcrowding was a breach of a duty owed to her, it still needed to play a role in her injury. There was no evidence to this effect. In fact, Blood testified that she and Golding were not crowding one another and that she had provided Golding sufficient space such

that if Golding had been paying attention, she could have avoided injuring Blood. Other witnesses corroborated this portion of Blood's testimony. The consistency of these statements on this point directly undercuts Blood's assertion that crowding was the cause of her injury. Blood failed to present evidence to refute this lack of causation.

Blood argues that her expert's report established a genuine issue of material fact as to whether crowding played a role in her injury. Blood's Human Factors expert, Gill, provided in the abstract that; "crowded conditions can increase the potential for contact between patrons." But Gill also stated in the report that she cannot resolve factual disputes and that her opinion 3 "applies only if the store was overcrowded." Opinion 3 states "[t]he conditions of the inside of the farm store, if indeed it was overcrowded, were a contributing cause to this incident." But, "[i]n order to preclude summary judgment, an expert's affidavit must include more than mere speculation or conclusory statements." Cho v. City of Seattle, 185 Wn. App. 10, 20, 341 P.3d 309 (2014). It is worth noting that Gill's identification of what she considered to be factual disputes has no bearing on the court's review under the summary judgment standard and its ultimate ruling as to whether there exists a genuine issue of material fact. Orion Corp. v. State, 103 Wn.2d 441, 461-62, 693 P.2d 1369 (1985).

In Cho v. City of Seattle, this court rejected an expert's declaration that a red light or other traffic infrastructure would have prevented a collision with the plaintiff by a drunk driver who was inattentive at the time of the crash. Id. at 20-21. The drunk driver admitted they had not been looking at the road when the

collision occurred. Id. at 18-19. This court rejected that the expert's "conclusory allegations, unsupported by any supporting facts" were sufficient to establish the inference that the driver who was not looking at the time would have stopped and avoided the collision. Id. Nor, did the court accept the speculation of how the plaintiff would have reacted had the infrastructure been different. Id.

Here, like in Cho, the expert's declaration which states "crowded conditions can increase the potential for contact" did not create a genuine issue of material fact, but rather simply stated what many would consider common knowledge. Further, the expert's declaration provided, "[t]o the extent the store was overcrowded at the time of this incident, this would be a contributing cause to Ms. Blood's injury incident." This statement by Gill is unsupported by the testimony on which she based her opinion and, as such, is mere conclusory speculation without supporting evidence. Blood's argument that Gill's declaration was sufficient to create a dispute of material fact is wholly unsupported by the record.

The undisputed evidence submitted to the trial court, and now this court, shows that there was sufficient space in the vicinity of the freezer and that crowding was not a proximate cause of Blood's injury. In light of our conclusion, there is no reason to wade into Blood's related assertion that negligent overcrowding is a viable theory for a tort claim in Washington; this case is not about overcrowding and there is no evidence to establish that overcrowding played a role in Blood's injury.

The trial court's grant of Willow-Wist's motion for summary judgment dismissal was proper. Since we affirm that ruling, we need not reach the court's denial of Blood's motion for reconsideration.

Affirmed.

WE CONCUR: