# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROBIN STANLEY, | No. 59273-8-II |
| Appellant, | |
| v. | |
| SIERRA PACIFIC LAND & TIMBER d/b/a SIERRA PACIFIC INDUSTRIES, d/b/a, SIERRA PACIFIC WINDOWS, and d/b/a SIERRA PACIFIC INDUSTRIES, INC., foreign corporations registered in Washington; and MARCIA TOBEY and JOHN DOE TOBEY, husband and wife and the marital community comprised thereof; JOHN and JANE DOE, husband and wife and the marital community comprised thereof as uninsured motorists, and ALLSTATE INSURANCE COMPANY, | PUBLISHED OPINION |
| Respondents. | |

VELJACIC, A.C.J. — Robin Stanley appeals the dismissal of his negligence claim against Sierra Pacific Land & Timber and Marcia Tobey (collectively referred to as Sierra) arising out of an automobile collision. Because there is a material issue of fact as to whether a reasonable semitruck driver with the same knowledge and expertise as Sierra's driver would have acted in the same manner, the trial court erred in granting summary judgment in favor of Sierra. Therefore, we reverse and remand.

FACTS

I.    THE ACCIDENT[1]

On the morning of May 20, 2019, Robin Stanley "was headed northwest on Portland Ave E, just north of [Interstate 5], in Tacoma at the intersection with E. 25th Street" in a white van. Clerk's Papers (CP) at 170.    Shortly after passing under the "railroad overpass," Stanley approached an uncontrolled intersection at Portland Avenue East and East 25th Street.  CP at 170. Stanley moved into the left turn lane and turned on his blinker.  An image depicting the intersection is provided below:



---

[1] The parties contest the facts surrounding the accident.

Portland Ave. E. & E. 25th St., GOOGLE MAPS, https://maps.app.goo.gl/grgbWccnTUdDbGaEA.[2]

Sierra's driver, who had a commercial driving license (CDL) at the time of the accident, was operating a blue semitruck[3] and was heading south toward Interstate 5. Sierra's driver's perspective was recorded on her vehicle's dash camera (dashcam) footage (the blue semitruck hood is visible at the bottom of the photo). The footage begins with Sierra's driver in the southbound center lane, approximately six vehicle lengths before the intersection at East 25th Street (Pilot Gas Station).

That morning, heavy traffic caused the southbound lanes of Portland Avenue East to be backed up. From Sierra's driver's perspective, several vehicles from the opposite direction could be seen turning west, crossing Sierra's Driver's three lanes of traffic, onto East 25th Street, even though her view of the entire intersection was partially obstructed.

---

[2] We take judicial notice of a map depicting Portland Avenue East and East 25th Street. *See State v. Nichols*, 161 Wn.2d 1, 5 n.1, 162 P.3d 1122 (2007) (noting that courts "routinely take judicial notice of maps").

[3] A semitruck is also referred to as a semitrailer, which is a "freight trailer that when attached is supported at its forward end by the fifth wheel device of the truck tractor." *Semitrailer*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/semitrailer (last visited Apr. 22, 2025). Additionally, semitrucks can be classified as tractor trailers, which are defined as "a large truck with a long trailer attached to the back of it." *Tractor Trailer*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/tractor%20trailer (last visited Apr. 22, 2025).



Ex. 1.[4]

After several vehicles went through the intersection, Stanley alleges that his van was visible in the left turn lane facing northwest.



Ex. 1.

---

[4] Exhibit 1 is the dashcam footage from Sierra's driver's semitruck. The following screenshots of the footage depict the events leading up to the collision.

Stanley was one of the northwest bound vehicles attempting to turn left (west) across southbound traffic onto East 25th Street. While Stanley was waiting to turn, he "observed a white pickup in the [southbound] left lane, as well as a white box-truck in the [southbound] center lane." CP at 172. The two vehicles had stopped before the intersection, which allowed Stanley and the vehicles behind him to turn left (west) onto East 25th Street. Prior to Sierra's driver reaching the East 25th Street intersection, she maneuvered the truck into the southbound right lane, which had minimal traffic, and travelled toward the intersection.



Ex. 1. Simultaneously, Stanley began to proceed through the intersection, turning left to proceed west on East 25th Street, even though his view of the southbound right lane (the one Sierra's driver was in) was obstructed by the other vehicles. Stanley was allegedly waved on by the driver in the white box truck that was waiting in the center southbound lane, indicating that it was safe to proceed.

Sierra's driver's view of the intersection was mostly obstructed by the southbound traffic in the southbound left and center lanes. Just before Sierra's driver entered the intersection, Stanley attempted to cross the southbound right lane toward the end of his left turn.



Ex. 1.

Sierra's driver's truck hit the back-right portion of Stanley's van, causing visible damage.



Ex. 1. Other vehicles could be seen turning left along Stanley's path after the accident.

Stanley claimed the collision caused him injury and brought a negligence action against Sierra and the driver.[5]

II.    SIERRA'S MOTION FOR SUMMARY JUDGMENT

Sierra moved for summary judgment.  Stanley submitted the affidavit of V. Paul Herbert, an alleged expert on commercial vehicle safety and compliance.  In their affidavit, Herbert explained that "[b]ecause a tractor trailer is bigger and longer than other vehicles, less maneuverable, and takes longer to brake and stop due to air brakes and mass, drivers of tractor trailers need more specialized knowledge and skill than drivers of single vehicles such as a car."  CP at 188.  Based on the dashcam footage and other evidence, Herbert concluded that Sierra's driver "failed to exercise [the] degree of care that a reasonably careful commercial truck driver would have exercised under the same or similar circumstances."  CP at 190.

At the hearing for Sierra's motion, the court questioned whether a CDL enhanced the duty of care for a truck driver.  Sierra maintained that there was no enhancement of duty, explaining the standard was the "ordinary duty of care."  Rep. of Proc. (RP) at 7.  Stanley argued that Sierra's driver operating "an 18-wheeler [was] different than a driver driving a small, maneuverable car."  RP at 21.  Ultimately, the court granted Sierra's motion for summary judgment.  Stanley moved for reconsideration, which the court denied.

Stanley appeals.

---

[5] Stanley also brought an action against the driver in the white box truck and Allstate Insurance. Both claims were resolved separately.  Stanley made several claims in his suit.  Here, we are concerned only with negligence regarding the auto collision itself.

ANALYSIS

I.    THE COURT ERRED IN GRANTING SUMMARY JUDGMENT.

Stanley argues that the court erred in granting Sierra's motion for summary judgment. We agree.

We review orders granting summary judgment de novo, "'engag[ing] in the same inquiry as the trial court.'" *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014) (internal quotation marks omitted) (quoting *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000)). "A court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000); CR 56(c). A material fact is a "'fact upon which the outcome of the litigation depends, in whole or in part.'" *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979) (quoting *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974)). We view all submitted facts and reasonable inferences in the light most favorable to the nonmoving party. *Hunt*, 181 Wn.2d at 140.

Generally, an expert opinion on an ultimate issue of fact is sufficient to establish a triable issue and defeat summary judgment. *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 301, 449 P.3d 640 (2019). "'[S]peculation and conclusory statements,'" however, "'will not preclude summary judgment.'" *Id.* (quoting *Volk v. DeMeerleer*, 187 Wn.2d 241, 277, 386 P.3d 254 (2016)). "'The expert's opinion must be based on fact and cannot simply be a conclusion or based on an assumption if it is to survive summary judgment.'" *Id.* (quoting *DeMeerleer*, 187 Wn.2d at 277).

To establish negligence, a plaintiff must show "'(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause.'" *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (quoting *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996)). Summary judgment is proper if a plaintiff cannot meet any one of these elements. *Id.* at 553. The threshold question in a negligence action is whether the defendant owes the plaintiff a duty of care. *Estate of Kelly v. Falin*, 127 Wn.2d 31, 36, 896 P.2d 1245 (1995).

A duty may be predicated on a violation of common law principles of negligence, a statute, or a regulation. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 932, 653 P.2d 280 (1982). All drivers owe a duty of care to other nearby drivers, including a duty to exercise ordinary care to avoid endangering others. *Martini ex rel. Dussault v. State*, 121 Wn. App. 150, 160 n.23, 89 P.3d 250 (2004). And drivers may assume that others will obey the rules of the road. *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 191-92, 668 P.2d 571 (1983). A trier of fact may consider the violation of a traffic rule imposed by statute or ordinance as evidence of negligence. RCW 5.40.050; *see Pudmaroff v. Allen*, 138 Wn.2d 55, 67-68, 977 P.2d 574 (1999).

"Ordinary care means the care a reasonably careful person would exercise under the same or similar circumstances." 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 10.02, at 128 (7th ed. 2019). It is a fundamental concept of tort law that the reasonable person standard encompasses an individual's knowledge and expertise. RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 12 (AM. L. INST. 2010) ("If an actor has skills or knowledge that exceed those possessed by most others, these skills or

9

knowledge are circumstances to be taken into account in determining whether the actor has behaved as a reasonably careful person.").[6]

Washington operates under a comparative negligence model. *See* RCW 4.22.005. Consequently, any "fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's . . . fault, but *does not bar recovery*." *Id.* (emphasis added). "Under comparative fault principles, the trier of fact must allocate fault between a negligent plaintiff and a negligent defendant." *Tegman v. Accident & Med. Investigations, Inc.*, 150 Wn.2d 102, 117, 75 P.3d 497 (2003). A court may only take the issue of comparative negligence away from the jury when a reasonable person "could reach only one conclusion from all of the evidence." *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992); *Bauman v. Complita*, 66 Wn.2d 496, 497, 403 P.2d 347 (1965).

Washington law requires "[t]he driver of a vehicle intending to turn to the left within an intersection . . . [to] yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard." RCW 46.61.185(1). And a driver must "drive at an appropriate reduced speed when approaching and crossing an intersection . . . when special hazards exists with respect to pedestrians or other traffic." RCW 46.61.400(3). Therefore, under RCW 46.61.185, the disfavored driver[7] has the primary duty to yield the right-of-way. *Bowers v. Marzano*, 170 Wn. App. 498, 506, 290 P.3d 134 (2012). And that duty rests with the disfavored driver "even if it can be shown that the oncoming vehicle was

---

[6] Considering superior knowledge within the reasonable person standard is not a new concept for Washington Courts. *See Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 444, 663 P.2d 113 (1983) ("Superior knowledge, skill, or training is always taken into account with the application of any reasonable person standard.").

[7] A disfavored driver is the individual who does not have the right-of-way. *See Pollard v. Rossoe Mfg. Co.*, 56 Wn.2d 862, 863, 355 P.2d 979 (1960).

proceeding unlawfully." *Doherty v. Mun. of Metro. Seattle*, 83 Wn. App. 464, 470, 921 P.2d 1098 (1996). Critically, however, "'all rights of way are relative and the duty to avoid accidents or collisions at street intersections *rests upon both drivers*.'" *Hough v. Ballard*, 108 Wn. App. 272, 288, 31 P.3d 6 (2001) (emphasis added) (quoting *Bennett v. Karnowsky*, 24 Wn.2d 487, 491, 166 P.2d 192 (1946)).

Stanley relies on *Roberts v. Leahy*, 35 Wn.2d 648, 214 P.2d 673 (1950), for the proposition that his duty to yield under RCW 46.61.185 was relieved under the circumstances of the accident. We disagree. In *Roberts*, our Supreme Court explained that a disfavored driver may be "discharged [of] his duty of using due care . . . in proceeding into [an] intersection" if "the disfavored driver looks to his right from a *proper place* and cannot see the favored vehicle because it is hidden by a condition *in the street*." 35 Wn.2d at 651 (emphasis in the original). But *Roberts* is not entirely helpful. *Roberts* was decided in 1950 and pre-dated Washington's revision to its comparative fault model. *See* RCW 4.22.005. Consequently, the case addressed only one party's negligence and did not evaluate the potential fault of the other party. While *Roberts* has not been overruled, it does not aid our analysis because it only contemplates an outdated, unilateral negligence scheme.

Even though Stanley was not discharged of his duty, when viewing the evidence, including the expert opinion, in the light most favorable to Stanley, a reasonable jury could conclude that Sierra and Sierra's driver were negligent. Under RCW 46.61.185, Stanley, who was turning left onto East 25th Street, was the disfavored driver and had the primary duty to yield to oncoming traffic. This fact, however, does not absolve Sierra of any obligation to avoid the accident. *See Ballard*, 108 Wn. App. at 288. Sierra's driver, like any other driver, had an obligation to "drive at an appropriate reduced speed when approaching and crossing an intersection . . . when special

11

hazards exists with respect to . . . traffic." RCW 46.61.400(3). And viewing the evidence in the light most favorable to the nonmoving party as we must, a reasonable jury could conclude that Sierra's driver was not approaching the intersection at an appropriate speed for the circumstances.

Sierra maintains that this was an ordinary automobile collision, thereby warranting an ordinary standard of care that does not consider Sierra's driver's experience. Contrary to Sierra's assertion, however, the operation of a semitruck holds a special significance in this case. Sierra's driver, who possessed a CDL at the time of the accident, enjoyed knowledge and expertise that an ordinary driver does not. The average driver does not have the skillset or qualifications to operate a semitruck. *See* RCW 46.25.050(1) ("Drivers of commercial motor vehicles *must obtain a commercial driver's license*.") (emphasis added). And there is good reason for this because "[a] typical commercial tractor trailer is approximately 70-80 feet long, 8.5' wide, 13'6" tall, and weighs up to 80,000 pounds." CP at 188. Therefore, Sierra's driver's experience must be taken into consideration when evaluating the reasonableness of their conduct. *See* RESTATEMENT (THIRD) OF TORTS § 12. Stanley submitted an affidavit from Herbert, an individual specializing in commercial vehicle safety and training. Herbert concluded that "a reasonably careful commercial truck driver would not have proceeded down the right lane at an accelerating speed past the stopped traffic in the left and center lanes" knowing there was an intersection ahead. CP at 190. Herbert's opinion relates to an ultimate issue: whether Sierra's and its driver's duty was breached. *Strauss*, 194 Wn.2d at 301. This establishes a genuine issue of fact. It is a material fact because it relates to Sierra's and Sierra's driver's potential negligence.

Sierra relies on *Mossman v. Rowley*, 154 Wn. App. 735, 229 P.3d 812 (2009), a Division Three case, to support the trial court's entry of summary judgment. In that case, Rowley collided with Mossman in an intersection as Mossman attempted to turn left. *Id.* at 737-38. Mossman, the

disfavored driver, attempted to argue that had Rowley been driving slower, the accident could have been avoided. *Id.* at 741. The court upheld summary judgment under RCW 46.61.185, reasoning that because Mossman was the disfavored driver, it did "not matter what speed . . . Rowley was traveling prior to the collision." *Id.* The court upheld summary judgment in spite of the fact that Rowley had allegedly been driving between 45 to 70 miles per hour (m.p.h.) in a 30 m.p.h. zone and had drank a couple beers before getting into their vehicle. *Id.* at 738.

We decline to apply *Mossman* as Sierra suggests. A strict application of RCW 46.61.185 seen in *Mossman* has the effect of denying any recovery based on a plaintiff's fault, which disregards Washington's comparative negligence model. *See* 154 Wn. App. at 741-42; RCW 4.22.005. Moreover, there are distinctions between *Mossman* and the case before us. In *Mossman*, the accident took place at an intersection at night and involved a sports utility vehicle (SUV) and a truck—two regular vehicles. 154 Wn. App. at 738-39. Here, in contrast, the accident involved a van and a semitruck, where the semitruck driver is required to have knowledge, expertise, and qualifications beyond the average driver. And the collision took place in an intersection backed up with heavy traffic, which could put a driver on notice that they might need to proceed with caution. Here, the finder of fact must consider whether a reasonable semitruck driver with the same knowledge and expertise would have conducted themselves in the same manner as Sierra's driver.[8]

---

[8] Sierra cites to two other cases citing RCW 46.61.185. *Ferara v. Makayla G.*, No. 71535-6-I (Wash. Ct. App. Apr. 27, 2015) (unpublished), http://www.courts.wa.gov/opinions/; *Keone v. United States*, No. C13-419RSM, 2014 WL 6632344 (W.D. Wash. Nov. 21, 2014) (court order). Because both opinions are unpublished, they are merely persuasive authority. We take no position on them.

Sierra also cites to several cases from foreign jurisdictions, most of which are unpublished, that purportedly stand for the proposition that CDL drivers do not have a heightened duty of care.[9] Some of the cases clearly do not support Sierra's position.[10] But again, we are not adopting a heightened standard of care for CDL drivers; rather, we are relying on long-standing principles of tort law that incorporate special skill when applying the ordinary standard of care. *See* RESTATEMENT (THIRD) OF TORTS § 12.

As a matter of law, Sierra's driver's duty of reasonable care encompasses their knowledge and expertise as a CDL driver. *See* RESTATEMENT (THIRD) OF TORTS § 12.[11] Consequently, there exists genuine issues of material fact regarding Sierra's and its driver's fault, which precludes summary judgment. Therefore, we conclude the court erred in granting summary judgment in favor of Sierra.

---

[9] *Davis v. Brown Local Sch. Dist.*, 2019-Ohio-246, 131 N.E.3d 431, 445-46 (Ct. App.) (holding that there is no "heightened duty of care for CDL drivers" because "[a] heightened duty of care for commercial drivers in Ohio would place some portion of the responsibility of every accident on a commercial driver, simply because she or he has been instructed to be a defensive driver"); *Dahlgreen v. Muldrow*, No. 1:06-cv-00065-MP-AK, 2008 WL 186641, at *7 (N.D. Fla. Jan. 18, 2008) (court order) (holding that "a commercial motor vehicle operator[]is held to the ordinary standard of care); *Tavorn v. Cerelli*, No. 268311, 2007 WL 2189075, at *2 (Mich. Ct. App. July 31, 2007) (unpublished) (holding that the ordinary standard of care applied because the action arose under "an ordinary traffic accident").

[10] *Cameron v. Werner Enters., Inc.*, No. 2:13-CV-243-KS-JCG, 2016 WL 3030181, at *6 (S.D. Miss. May 25, 2016) (court order) (declining to address whether a heightened standard of care applied because the court did not have adequate briefing on the issue).

[11] Other jurisdictions have reached a similar result. *See Dakter v. Cavallino*, 363 Wis. 2d 738, 866 N.W.2d 656 (2015) (holding that a semi-truck driver's actions should be assessed through the conduct of a reasonable person with the same knowledge and expertise).

CONCLUSION

Accordingly, we reverse and remand the judgment for further proceedings consistent with this opinion.

Veljacic, A.C.J.

We concur:

Glasgow, J.

Che, J.