# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MDK GENERAL CONSTRUCTION, LLC, a Washington limited liability company, | DIVISION ONE |
| Appellant, | No. 85704-5-I |
| v. | UNPUBLISHED OPINION |
| ASPEN GROVE OWNERS ASSOCIATION, a Washington non-profit corporation, | |
| Respondents, | |
| INTEGRITY CONSTRUCTION SOLUTIONS, LLC, a Washington limited liability company; AMERICAN CONTRACTORS INDEMNITY COMPANY, a foreign corporation, under Bond Number 100530967, | |
| Defendants. | |

DWYER, J. — MDK General Construction, LLC, appeals from the order of the superior court granting the Aspen Grove Owners Association's motion for summary judgment, dismissing MDK's lien foreclosure claim against the Association, and ordering MDK to record a release of its lien claim against the Aspen Grove Condominium. On appeal, MDK asserts that the trial court erred in so doing because MDK timely accomplished service of process of its materialmen's lien foreclosure action on the owner of the condominium against which it recorded that lien. This was so, according to MDK, because the owner

of the property in question is the Association, the nonprofit unit owners' association charged with governing and operating the condominium in question. Because MDK fails to establish that the Association was—or has become—the owner of the condominium in question and because MDK fails to establish that it accomplished service of process on another individual or entity that would constitute the owner of the condominium in question, we conclude that the trial court did not err by dismissing MDK's lien foreclosure action against the Association and by ordering MDK to record a release of its lien against the condominium at issue. Accordingly, we affirm.

I

In March 2005, a document entitled "Condominium Declaration for Aspen Grove, a Condominium" was recorded with the King County Department of Assessments. The declaration defined the "Declarant" as Park Promenade Apartments, LLC, Windbridge, LLC, and Holton Kabili Seattle, LLC. The declaration identified a parcel of real property in King County and indicated that the parcel of land would be subjected to a condominium.

The declaration set forth that the property interests in the real estate created by the condominium declaration would be property interests in the condominium's 96 individual units—defined as the physical portions of the condominium designated for separate ownership—and in the condominium's "common elements"—defined as "all portions of the Condominium other than Units." The declaration vested all of the property interest in the condominium's common elements in the condominium's 96 units, allocating to each unit an

2

undivided property interest in the common elements ranging from 0.82 percent to 1.46 percent. The sum of those interests was 100 percent.

The declaration described the boundaries of a unit as

> the unfinished interior surfaces of the perimeter walls, floors, and ceilings of the Units, and shall include within the Unit all wallboard, plasterboard, plaster, paneling, tiles, wallpaper, paint, finished flooring, and any other materials constituting any part of the finished surfaces thereof, provided, that the Unit boundaries shall not include those Common Elements specified in Article 6. All spaces, interior partitions, and other fixtures and improvements within the boundaries of a Unit are a part of the Unit.

The declaration described the boundaries of the common elements, as pertinent here, as "all portions of the Condominium other than the Units, including all portions of the walls, floors, or ceilings which are not a part of or within the Unit boundaries."

The declaration also provided for an "Owners Association," and indicated that "[t]he Owners of Units shall constitute an owners association to be known as the Aspen Grove Owners Association. The Association shall be organized as a nonprofit corporation, no later than the date the first Unit in the Condominium is conveyed."

That same month, articles of incorporation were filed to create the Aspen Grove Owners Association, a nonprofit corporation

> organized to provide an entity pursuant to the Washington Condominium Act (Ch. 64.34 RCW), hereinafter called the "Condominium Act," for the operation of Aspen Grove, a condominium, located in King County, Washington, and to engage in all such activities as are incidental or conducive to the attainment of the objectives of the corporation and all activities which are permitted to be done by a nonprofit corporation under any laws that may now or hereafter be applicable or available to this corporation.

3

> The powers of this corporation shall be subject to and shall be exercised in accordance with the Condominium Act and the provisions of the Condominium Declaration for Aspen Grove, a condominium, as it may from time to time be amended, hereinafter referred to as the "Declaration."

Fifteen years later, in 2020, the Association contracted with Integrity Construction Solutions, LLC, to perform a multi-million-dollar remediation project on the condominium's buildings.

In September 2021, Integrity hired MDK as a subcontractor to perform remediation services "on the exterior of all of the condominium's buildings," specifically, to "perform construction services in the form of exterior siding and related work." Br. of Appellant at 4. Integrity agreed to pay MDK a sum of $70,000 for this work.

MDK later commenced work on the exterior of the condominium's buildings. During the time in question, the Association issued monthly payments to Integrity for the remediation project approximating $3.9 million. Integrity, however, did not issue any valid payments to MDK for MDK's work. According to MDK, by January 2022, when it stopped performing the work for which it had been hired by Integrity, MDK had performed $65,000 worth of work and had not received any payment from Integrity for that work.

Two months later, in March 2022, Integrity filed for Chapter 11 bankruptcy.

One month later, in April 2022, MDK recorded a materialmen's lien of $65,000 against the real estate described in the Aspen Grove condominium declaration. MDK's lien alleged that the owner of that parcel of land was the Aspen Grove Owners Association. The lien did not further identify any

4

individuals or entities as purported owners either of that parcel of land or of the Aspen Grove condominium.

In December 2022, MDK filed a complaint in King County Superior Court seeking to foreclose on its materialmen's lien against the condominium. The complaint identified, as pertinent here, the Aspen Grove Owners Association as a defendant.[1] MDK's complaint did not individually identify any other persons or entities purported to be Aspen Grove condominium unit owners as parties to its lien enforcement action.

That same month, MDK accomplished service of process on the Aspen Grove Owners Association. MDK did not accomplish service of process, either that month or within 90 days of the filing of its lien enforcement action, on any additional persons or entities purported to be Aspen Grove condominium unit owners.

In July 2023, the Association moved for summary judgment dismissal of MDK's claim against it on the basis that it was not an owner of the property against which MDK had recorded its lien and that MDK had, therefore, not timely accomplished service of process against the owner of the property in question. The trial court granted the Association's motion, dismissed MDK's claim against the Association, and ordered MDK to record a release of its lien against the condominium in question.[2]

MDK now appeals.

---

[1] The complaint also identified Integrity and American Contractors Indemnity Company as defendants. MDK later voluntarily dismissed these companies from the case.

[2] The Association also requested an award of attorney fees and costs, which the trial court granted.

II

MDK asserts that the trial court erred by granting the Association's motion for summary judgment because MDK accomplished service of process against the owner of the property against which it recorded a materialmen's lien authorized by chapter 60.04 RCW. MDK's assertion fails.

A

Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. CR 56(c); Hutchins v. 1001 Fourth Ave. Assocs., 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). The moving party bears the initial burden of establishing its right to judgment as a matter of law. Once the moving party satisfies its initial burden, the burden then shifts to the nonmoving party to show that a triable issue exists. Doherty v. Mun. of Metro. Seattle, 83 Wn. App. 464, 468, 921 P.2d 1098 (1996). All reasonable inferences from the evidence must be construed in favor of the nonmoving party. Lamon v. McDonnell Douglas Corp., 91 Wn.2d 345, 349, 588 P.2d 1346 (1979) (quoting Morris v. McNicol, 83 Wn.2d 491, 494-95, 519 P.2d 7 (1974)).

As discussed, infra, the matter before us involves the statutory authority set forth in chapter 60.04 RCW, regarding a materialmen's lien, and in chapter 64.34 RCW, regarding the creation of a condominium. Accordingly, the matter before us is one of statutory interpretation.

It is a familiar standard that

6

> [i]n interpreting a statute, the "'fundamental objective is to ascertain and carry out the Legislature's intent.'" <u>Citizens All. for Prop. Rights Legal Fund v. San Juan County</u>, 184 Wn.2d 428, 435, 359 P.3d 753 (2015) (quoting <u>Dep't of Ecology v. Campbell & Gwinn, LLC</u>, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). "'[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" <u>Citizens All.</u>, 184 Wn.2d at 435 (alteration in original) (quoting <u>Campbell & Gwinn</u>, 146 Wn.2d at 9-10). In determining the plain meaning of a statute, we consider "the ordinary meaning of words, the basic rules of grammar, and *the statutory context to conclude what the legislature has provided for in the statute and related statutes*." <u>In re Forfeiture of One 1970 Chevrolet Chevelle</u>, 166 Wn.2d 834, 839, 215 P.3d 166 (2009).

<u>Linville v. Dep't of Ret. Sys.</u>, 11 Wn. App. 2d 316, 321, 452 P.3d 1269 (2019) (emphasis added).

The lien in question was filed pursuant to chapter 60.04 RCW. That statutory chapter regards mechanics' and materialmen's liens. It provides, in pertinent part, that "any person furnishing labor, professional services, materials, or equipment for the improvement of real property shall have a lien upon the improvement for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner, or the agent or construction agent of the owner." RCW 60.04.021.

As pertinent here, our legislature has mandated that, when a party seeks to enforce a lien recorded against real property pursuant to this chapter, certain procedural requirements must be followed.

> No lien created by this chapter binds the property subject to the lien for a longer period than eight calendar months after the claim of lien has been recorded unless an action is filed by the lien claimant within that time in the superior court in the county where the subject property is located to enforce the lien, and *service is made upon*

7

*the owner of the subject property within ninety days of the date of filing the action . . . .* This is a period of limitation.

RCW 60.04.141. Accordingly, the party seeking to enforce the lien must accomplish service of process on the "owner of the subject property" within 90 days of the date of filing such an action or else be barred from enforcing such a lien by the statute of limitation. RCW 60.04.141.

The term "owner" is left undefined in the statute.[3] Accordingly, in order to determine who or what the legislature intended to constitute an "owner" in regard to the matter before us, we look to statutory context relevant to the matter before us for further guidance. Linville, 11 Wn. App. 2d at 321 (quoting One 1970 Chevrolet Chevelle, 166 Wn.2d at 839).

MDK's lien was recorded against "Aspen Grove, a Condominium," real property subjected to a condominium pursuant to chapter 64.34 RCW. MDK's lien stated that the Association, a unit owners' association created pursuant to that chapter's mandate, was the owner of the Aspen Grove condominium. Given that, we first turn to chapter 64.34 RCW—and MDK's assertions arising thereunder—in order to determine whether the legislature intended for a condominium unit owners' association to be the owner of a condominium.

---

[3] In the law, "owner" is commonly defined as follows:
**owner.** (bef. 12c) "Someone who has the right to possess, use, and convey something; a person in whom one or more interests are vested. • An owner may have complete property in the thing or may have parted with some interests in it (as by granting an easement or making a lease).
BLACK'S LAW DICTIONARY 1329 (12th ed. 2024).

8

1

MDK contends that, pursuant to chapter 64.34 RCW, the Association was the owner of the Aspen Grove condominium for the purpose of its materialmen's lien.[4]  MDK is incorrect.

i

Chapter 64.34 RCW sets forth the codification of the condominium act, passed by our legislature and intended to apply to condominiums created in this state after July 1, 1990.[5]  RCW 64.34.010.  Our legislature defined a "condominium" as

> real property, *portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions.  Real property is not a condominium unless the undivided interests in the common elements are vested in the unit owners,* and unless a declaration and a survey map and plans have been recorded pursuant to this chapter.

RCW 64.34.020(10) (emphasis added).  The act defined certain of these terms, in pertinent part, as follows:

> (7) "Common elements" means *all portions of a condominium other than the units.*
> . . . .
> (17) "Declaration" means the document, however denominated, that creates a condominium by setting forth the information required by RCW 64.34.216[6] and any amendments to that document.

---

[4] Because, as discussed below, MDK fails to establish that the Association had any property interest in the condominium in question, we need not distinguish between whether the Association was *an* owner of the condominium in question or *the* owner of the condominium in question.  Therefore, for simplicity and in alignment with the materialmen's lien statute in question, we characterize the issue as involving whether MDK was the owner of the condominium in question.

[5] The condominium herein was created in 2005.

[6] RCW 64.34.216 sets forth the mandatory contents of a condominium declaration.

. . . .
(43) "Unit" means a physical portion of the condominium *designated for separate ownership*, the boundaries of which are described pursuant to RCW 64.34.216(1)(d). . . .
(44) "Unit owner" means *a declarant or other person who owns a unit* . . . . "Unit owner" means the vendee, not the vendor, of a unit under a real estate contract.

RCW 64.34.020 (emphasis added).[7]

Furthermore, our legislature provided that "[i]f there is any unit owner other than a declarant, each unit that has been created, together with its interest in the common elements, constitutes for all purposes a separate parcel of real property." RCW 64.34.040(1).[8]

With regard to the difference between a condominium unit and the condominium's common elements, RCW 64.34.216(1)(d) requires that a condominium declaration set forth "[t]he identifying number of each unit created by the declaration and a description of the boundaries of each unit if and to the extent they are different from the boundaries stated in RCW 64.34.204(1)." And RCW 64.34.204, for its part, provides:

Except as provided by the declaration:
(1) *The walls, floors, or ceilings are the boundaries of a unit*, and all lath, furring, wallboard, plasterboard, plaster, paneling, tiles,

---

[7] We have omitted mention of the definitional components of "unit" and "unit owner" concerning leasing a unit in a leasehold condominium because these components are not material to the matter before us. We have also omitted mention of "limited common elements" for the same reason. See RCW 64.34.020(28), .204(2)-(4).

[8] The legislature defined a "declarant," as pertinent here, as

(a) Any person who executes as declarant a declaration as defined in subsection (17) of this section; or
. . .
(d) Any person who is the owner of a fee interest in the real property which is subjected to the declaration at the time of the recording of an instrument pursuant to RCW 64.34.316 and who directly or through one or more affiliates is materially involved in the construction, marketing, or sale of units in the condominium created by the recording of the instrument.

RCW 64.34.020(15). The legislature did not define a declarant as including a unit owners' association.

wallpaper, paint, finished flooring, and any other materials constituting any part of the finished surfaces thereof are a part of the unit, and *all other portions of the walls, floors, or ceilings are a part of the common elements.*

(Emphasis added.)

Additionally, the legislature set forth the manner in which a condominium declaration must allocate and account for each owners' interest in the condominium's common elements:

(1) *The declaration shall allocate a fraction or percentage of undivided interests in the common elements* and in the common expenses of the association, and a portion of the votes *in the association*, *to each unit* and state the formulas or methods used to establish those allocations. Those allocations may not discriminate in favor of units owned by the declarant or an affiliate of the declarant.
. . . .
(4) Except for minor variations due to rounding, *the sum of the undivided interests in the common elements* and common expense liabilities *allocated at any time to all the units must each equal one if stated as fractions or one hundred percent if stated as percentages.*

RCW 64.34.224.[9]

Given all of this, it is plain that the legislature intended for the owner of the real property subjected to a condominium to be the condominium's unit owners. As set forth above, a unit owner is a person who owns a unit. A unit constitutes a separate parcel of real property comprised of (1) the property interest in the physical portion of the condominium designated for separate ownership and (2)

---

[9] We also note that this provision states as follows:
*Except where permitted by other sections of this chapter*, the common elements are not subject to partition, and *any purported* conveyance, *encumbrance*, judicial sale, *or other* voluntary or *involuntary transfer of an undivided interest in the common elements made without the unit to which that interest is allocated is void.*
RCW 64.34.224(5) (emphasis added).

11

an undivided property interest in the condominium's common elements. Moreover, the undivided property interest in the condominium's common elements must not only be allocated between those physical portions designated for separate ownership, but also the sum of that allocation *must* equal 100 percent of that interest. Taken together, the statutory framework reflects that the legislature intended for property interests in a condominium to be fully allocated among the unit owners. Therefore, for the purposes of the condominium act, the owner of a condominium is the unit owners of that condominium.

ii

The condominium act also sets forth certain provisions regarding a unit owners' association. The legislature defined an "Association" or "unit owners' association" as "the unit owners' association organized under RCW 64.34.300." RCW 64.34.020(4). The legislature did not define a unit owners' association as an owner or unit owner.

RCW 64.34.300, for its part, mandates that "[a] unit owners' association shall be organized no later than the date the first unit in the condominium is conveyed. . . . The association shall be organized as a profit or nonprofit corporation." RCW 64.34.300. The legislature provided a list of governing and operating powers that a unit owners' association may exercise, including, as pertinent here, that such an association may "[a]cquire, hold, encumber, and convey in its own name any right, title, or interest to real or personal property, but common elements may be conveyed or subjected to a security interest only

12

pursuant to RCW 64.34.348." RCW 64.34.304(1)(h).[10] The legislature did not expressly mandate that a unit owners' association would have a property interest in the physical portions of the condominium designated for separate ownership or in the condominium's common elements.

iii

We also note that the foregoing analysis has been described elsewhere:

A "condominium" is made up of two and only two physical elements, the "units" plus common areas, called "common elements" in the Condominium Act. [RCW 64.34.020(7), (10), (43).] The element that is the subject of individual ownership is the "unit"; it is legally a separate parcel of realty, separately owned, taxed, and financed. [RCW 64.34.040.] All other portions of a condominium are the "common elements," owned in common by the unit owners in undivided shares as tenants in common. . . . Unless the condominium declaration provides otherwise, when a unit is located in a building, its boundaries are the inner finished surfaces of its perimeter walls, floors, ceilings, windows, and doors. Interior spaces, partitions, and other fixtures and improvements within those boundaries are part of the unit. [RCW 64.34.204(1), (3).]
. . . .
"Common areas" or "common elements" is usually defined by exclusion, to mean all parts of a condominium other than the units; it is so defined by Washington's Condominium Act. [RCW 64.34.020(7).] . . .
The "declaration" is the document by which real estate is subjected to the condominium form of ownership and a condominium created. [RCW 65.34.020(17).] "Unit owners' association" is a statutorily required unit owners' profit or nonprofit corporation, which has powers to manage common elements and to perform other functions given it by the statute, the declaration, and its own organic documents. [RCW 64.34.020(4), .216, .224, .300, .376.] The association is a form of homeowners' association, essentially similar to such associations that have long existed in some residential subdivisions. *It does not own the common elements; these are owned by the unit owners as tenants in common, as already explained.* However, the association, through

_____

[10] RCW 64.34.348, for its part, sets forth requirements for voluntary conveyance or encumbrance of a condominium's common elements.

its officers and employees, perhaps including professional managers, and ultimately through its members the unit owners, maintains and regulates use of common elements and even units.

18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 12.2 at 21-23 (2nd ed. 2004) (emphasis added) (footnotes omitted).

iv

Taken together, the condominium act does not reflect that the legislature intended to require that a unit owners' association be allocated a property interest in a condominium created under that act. As discussed above, the legislature intended to fully vest the condominium's property interest in the condominium's unit owners. This included an intention to allocate to such owners not only the physical portions designated for separate ownership, but also a percent interest in the condominium's common elements that summed up to 100 percent.

After such allocation to the unit owners, according to the legislature, no property interest would remain to be allocated. By implication, no property interest would remain to be allocated to a unit owners' association. Thus, the legislature did not mandate that a condominium created pursuant to chapter 64.34 RCW must allocate a property interest in the condominium to a unit owners' association.

v

MDK nevertheless asserts that other provisions set forth in chapter 64.34 RCW mandate that a unit owners' association must be the owner of a condominium created pursuant to that chapter. MDK's assertion fails.

MDK first asserts that a unit owners' association must be the owner of a condominium because, according to MDK, the legislature provided that actions alleging a tort or contract claim against a unit owners' association must be brought against such an association, rather than against unit owners or the association's officers. For this proposition, MDK relies on RCW 64.34.344, which reads as follows:

> Neither the association nor any unit owner except the declarant is liable for that declarant's torts in connection with any part of the condominium which that declarant has the responsibility to maintain. *Otherwise, an action alleging a wrong done by the association must be brought against the association and not against any unit owner or any officer or director of the association.*

(Emphasis added.)

MDK's reliance is unavailing. As an initial matter, MDK does not present persuasive argument, statutory analysis, or decisional authority establishing that the legislature intended for this provision to relate to the allocation of a property interest in the condominium. Nor does MDK establish that this provision is material to an action regarding the enforcement of a lien action against a condominium. Indeed, MDK does not establish that such an action is one predicated in tort or contract nor does MDK establish that such a procedural

15

requirement is inconsistent with the notice requirements of the materialmen's lien statute. Accordingly, MDK's assertion fails.

MDK next asserts that a unit owners' association must be the owner of a condominium under the condominium act because the legislature provided that a money judgment against a unit owners' association is a lien against all of a condominium's unit owners. For this proposition, MDK relies on RCW 64.34.368(1), (4), which read as follows:

> (1) Except as provided in subsection (2) of this section, *a judgment for money against the association perfected under RCW 4.64.020 is a lien in favor of the judgment lienholder against all of the units in the condominium and their interest in the common elements at the time the judgment was entered.* No other property of a unit owner is subject to the claims of creditors of the association.
>   . . . .
>   (4) A judgment against the association shall be filed in the name of the condominium and the association and, when so filed, is notice of the lien against the units.

RCW 64.34.368. RCW 4.64.020, for its part, regards the manner in which a clerk is to enter a verdict upon the verdict's return.

MDK does not establish the materiality of this provision to the matter before us. The subject matter of this provision does not regard a lien against a condominium as a result of a materialmen's work. Rather, the provision concerns a lien against a condominium resulting from a money judgment entered against an association after a verdict has been reached. Indeed, the provision sets forth that a money judgment against a unit owners' association—which may properly defend the unit owners in a legal action filed against them, RCW 64.34.304(1)(d)—becomes a lien against all of the condominium units and their

16

interest in the common elements of the condominium. MDK again does not provide persuasive argument, statutory analysis, or decisional authority in support of the notion that this provision is material to the matter before us.

Moreover, contrary to MDK's assertions, that a judgment for money against an association constitutes a lien against the unit owners' condominium property only reinforces our conclusion herein that the property interest in a condominium resides not in a unit owners' association but, rather, in the condominium unit owners.

Thus, MDK does not establish that the legislature intended to mandate that a unit owners' association must have a property interest in a condominium created pursuant to chapter 64.34 RCW. Accordingly, MDK fails to establish that the condominium act supports that the Association is the owner of the Aspen Grove condominium for the purpose of MDK's materialmen's lien against the condominium.

2

MDK next asserts that, pursuant to the Aspen Grove condominium declaration, the Association was the owner of the condominium in question for the purpose of its materialmen's lien. Again, MDK is incorrect.

As set forth above, the condominium declaration herein subjected the parcel of real estate described in that declaration to a 96-unit condominium. The declaration divvied the property interest in the common elements into 96 undivided property interests and allocated those interests between the 96 units. The declaration also identified the Association in question and granted it certain

17

authority, including the authority to "[a]cquire, hold, encumber, convey, and dispose of, in the Association's name, right, title, or interest to real or tangible and intangible personal property, and arrange for and supervise any addition or improvement to the Condominium."

As an initial matter, MDK does not contend that the declaration is inconsistent with that which was required by the condominium act. Indeed, if it were so inconsistent, the declaration provides that the condominium act would prevail. And, as discussed above, the legislature did not mandate that any property interest be allocated to a unit owners' association like the Association herein.

Furthermore, MDK does not contend that the declaration itself expressly allocated any property interest to the Association. Indeed, MDK has presented no documentation demonstrating an intent by the declarants to convey any property interest in the condominium to the Association or any documentation conveying such property thereto. Rather, MDK contends that the Association is the owner of the condominium in question because, according to MDK, the Association is the successor-in-interest to the declarants identified in the Aspen Grove declaration.

Here, as set forth above, the condominium declaration in question provided that an "Owner" or "Unit Owner" is "the Declarant or other person who owns a Unit."[11] The declaration further defined that Declarant "means Park

---

[11] That provision also indicates that an owner or unit owner "does not include a person who has an interest in a Unit solely as security for an obligation."

Promenade Apartments, LLC, a California limited liability company; Windbridge LLC, a California limited liability company; and Holton Kabili Seattle LLC, a Colorado limited liability company, and *its successors and assigns*." (Emphasis added.)

The declaration defined "Association" as "the owners association identified in Article 12" of the declaration. The declaration further provided that "[s]ome of the terms defined above are also defined in the Condominium Act. The definitions in the Declaration are not intended to limit or contradict the definitions in the Condominium Act. If there is any inconsistency or conflict, the definition in the Condominium Act will prevail." Therefore, the declaration also incorporated the definition of association, described in the condominium act, supra.

A successor, as a legal term, is defined as "1. Someone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor. 2. A corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." BLACK'S LAW DICTIONARY 1738 (12th ed. 2024).

MDK does not establish that it was the intention of the Aspen Grove condominium declaration for the Association to be a successor-in-interest to the declarants. As an initial matter, the parties do not dispute that the declaration itself does not expressly allocate to the Association such a successorship interest. Furthermore, MDK does not present any evidence tending to show that the declarants intended for the Association to be their successor-in-interest. Indeed, MDK does not present any documentation identifying a chain of

19

successorship between any of the declarants and the Association.  Moreover, even if it did present such documentation, MDK does not present any documentation indicating that such a successorship included the conveyance of a property interest in the condominium or any documentation conveying such a property interest.[12]

Furthermore, MDK has not established that the Aspen Grove condominium declaration vested in the Association any property interest in the condominium in question.  Indeed, as set forth above, the declaration followed the applicable statutory mandates in fully allocating the property interest to the unit owners, whereas the Association was, consistent with those statutory mandates, formed as a nonprofit in this state to govern and operate the Aspen Grove condominium.  Moreover, MDK does not provide material evidence, citation to the declaration, or persuasive argument in support of the proposition that the condominium declaration herein vested any such property interest in the Association.

Thus, MDK fails to establish that the Association was a successor-in-interest to the declarants herein or that the declaration itself vested any of the condominium's property interest in the Association.  Accordingly, MDK's assertion that the Association is an owner of the Aspen Grove condominium pursuant to the condominium declaration fails.

---

[12] MDK somewhat vaguely relies on the Association's governing and operating responsibilities as evidence of its ownership of the condominium in question.  However, in matters of property law and ownership of real estate, MDK does not present cogent argument or authority establishing that operation of real estate connotes ownership of real estate.

3

MDK next asserts that the Association is the owner of the Aspen Grove condominium for the purpose of its materialmen's lien because, according to MDK, since the recording of the Aspen Grove condominium declaration, the Association has acquired an ownership interest in the Aspen Grove condominium. MDK's assertion fails.

Material evidence is evidence "[h]aving some logical connection with the consequential facts." BLACK'S, supra, at 1166-67.

Here, in support of its contention, MDK's briefing provides a list of six superior court cases, along with those cases' cause numbers, in each of which Aspen Grove is purported to be a named plaintiff and in each of which different individuals are named as defendants. After listing these six cases, and without providing any evidentiary support or citation, MDK avers that these cases involve condominium assessment foreclosure actions initiated by the Association against unit owners in the Aspen Grove condominium. MDK does not provide any additional context or evidence with regard to these cases.

Taken in the light most favorable to MDK, the construction company fails to establish the materiality of the information provided. For instance, MDK fails to provide the following: (1) proof that the named defendant or defendants were, in actuality, Aspen Grove condominium unit owners, (2) proof that the claims in question were, in actuality, condominium assessment foreclosure actions—as opposed to asserting any other cause of action, (3) proof that such claims could result in a transfer of ownership in the condominium to the Association, (4) proof

21

of the facts underlying those claims, (5) proof as to whether any of the claims were determined to have any merit, (6) proof that underlying claims were—or were not—satisfied by the owner—or mortgagor—before judgment was entered, (7) proof of a court judgment determining the merit of such claims and ordering the transfer of a property interest in the condominium, (8) proof of a deed transferring ownership to the Association, or (9) proof that, even if such ownership had been transferred, the Association did not otherwise convey such ownership to another prior to the work in question being performed by MDK.

Given this absence of proof, MDK fails to establish that such evidence is material such that it creates a genuine issue of material fact for trial. Therefore, MDK's assertion that the Association has since acquired a property interest in the Aspen Grove condominium fails.

4

To sum up, pursuant to RCW 60.04.141, MDK was required to accomplish service of process against the owner of the Aspen Grove condominium within 90 days of filing its lawsuit in this matter in order for MDK's lien claim to not be barred by the statute of limitation. As set forth above, MDK accomplished service of process within this time period against the Association, a nonprofit entity charged with governing and operating the Aspen Grove condominium. However, pursuant to the foregoing analysis and conclusions, MDK has failed to establish that the Association possessed any property interest in the Aspen Grove condominium during the time in question and, therefore, failed to establish that the Association was the owner of the property to which MDK subjected its

lien.[13]  The parties do not dispute that MDK did not serve the individual unit owners of the Aspen Grove condominium during the time in question.

Thus, MDK has failed to establish that it accomplished service of process against the owner of the condominium within the time allotted by the materialmen's lien procedural limitations statute.  Thus, MDK's lien claim was barred by the statute of limitations.  Accordingly, the trial court did not err by granting the Association's motion for summary judgment and ordering that MDK's lien against Aspen Grove condominium be released.

B

MDK also asserts that the trial court erred by entering an award of attorney fees and costs to the Association.  The trial court erred, according to MDK, because the Association should not have prevailed at summary judgment.

---

[13] MDK, for the first time in its reply brief, relies on RCW 60.04.021, RCW 60.04.051, and RCW 64.34.260 to support its assertions on appeal.  We do not consider arguments raised for the first time in a reply brief.  RAP 10.3(c).  Furthermore, as discussed below, even if we were to consider these statutory provisions, MDK's assertions would fail.

MDK first relies on RCW 60.04.021, set forth above, for the proposition that the Association, by ordering the construction work at issue, was an agent of the owners of the condominium for the purpose of its lien.  However, that the Association ordered the work in question on behalf of the unit owners does not establish that the Association was an owner of the property pursuant to the procedural limitations set forth in RCW 60.04.141.

RCW 60.04.051, for its part, is a catch-all lien provision regarding property that "cannot be subjected to" a lien.  As discussed herein, however, the property in question can be so subjected, predicated on accomplishing proper service against the owner of the condominium.

Next, RCW 64.34.260 reads as follows: "Subject to the provisions of the declaration, a declarant has an easement through the common elements as may be reasonably necessary for the purpose of discharging a declarant's obligations or exercising special declarant rights, whether arising under this chapter or reserved in the declaration."  However, the legislature expressly distinguished between a declarant and a unit owners' association.  Compare RCW 64.34.020(4) (defining "Association" or "unit owners' association"), with RCW 64.34.020(15) (defining a "Declarant").  MDK does not present cogent argument, statutory analysis, or decisional authority in support of divining a legislative intent to conflate these two distinct statutory concepts.  Accordingly, for these reasons, even if we were to consider MDK's assertions, these assertions would be unavailing.

Because we conclude that the trial court did not err in granting the Association's summary judgment motion and because MDK presents no other alleged basis for trial court error with regard to its attorney fee and cost award, MDK's assertion fails.

III

The Association requests an award of attorney fees and costs on appeal. An award of attorney fees on appeal is permitted if supported by applicable law. RAP 18.1. In support of its request, the Association relies on RCW 60.04.181(3), which authorizes the court of appeals to award attorney fees and costs to a prevailing party in a lien action.

We conclude that the Association is the prevailing party in this matter. Therefore, we grant the Association's request.[14] Upon proper application, a commissioner of our court will enter an appropriate order.

Affirmed.

---

[14] MDK also requests an award of attorney fees and costs should it prevail on appeal. Because we conclude that MDK is not the prevailing party, we deny MDK's request.

WE CONCUR:

Feldman, J.     Brennan, J